THE ALTON AND SOUTHERN RAILROAD et al. Appellants,
vs. THE ILLINOIS COMMERCE COMMISSION ex rel. The
Perry Coal Company et al. Appellees.

*Opinion filed April 24, 1925.*

1. PUBLIC UTILITIES—*what evidence is not competent in fixing rates.* In a proceeding before the Commerce Commission to determine the reasonableness of rates for the hauling of coal from mines in a certain locality, evidence of the rates charged in other districts or States is not competent for the purpose of comparison in the absence of evidence showing a similarity of conditions.

2. SAME—*court cannot modify or revise order of Commerce Commission fixing rates.* The circuit court, in reviewing an order of the Commerce Commission fixing certain rates for the hauling of coal in a certain locality, has no authority to revise or modify the order, as courts are not rate-fixing bodies and have no authority to fix or establish rates for public utilities, but such power belongs to the legislature and has been delegated to the Commerce Commission.

3. SAME—*evidence before the Commerce Commission should be limited to issue made by complaint.* While the Commerce Commission should be liberal in construing the pleadings before it, a public utility against whom complaint is made is entitled, under the statute, to a statement of complaint sufficiently clear to put it upon its defense, and the evidence should be limited to the issue made.

4. SAME—*order of commission cannot exceed scope of the complaint made.* The Commere Commission, on complaint of excessive rates for the hauling of coal, cannot enter a valid order which is broader than the written complaint filed, and the carriers complained of cannot be required to reduce rates for the hauling of coal from points or mines not included within the complaint.

APPEAL from the Circuit Court of St. Clair county; the Hon. GEORGE A. CROW, Judge, presiding.

J. L. ABER, WILLIAM BURGER, L. H. STRASSER, ELMER A. SMITH, RALPH F. LESEMANN, and KRAMER, KRAMER & CAMPBELL, for appellants.

M. C. YOUNG, and BURTON & HAMILTON, for appellees.

316—40

Mr. JUSTICE HEARD delivered the opinion of the court:

In March, 1923, the Perry Coal Company and seventeen other companies, operating approximately twenty-seven mines in St. Clair and Madison counties within a radius of 20 miles of East St. Louis, filed complaints against the appellant carriers. The mines in question are within what is known as the Belleville district, or Group 2. They are also within what is known as the "inner circle" of that group. The average distance of these mines from East St. Louis is 13.43 miles, the distance varying from 6.5 miles to approximately 20 miles. (Distant mines in Group 2 are approximately 70 miles from East St. Louis.) The complainant coal companies contended that the rate of 91 cents per ton on coal in car-load lots from their mines to points within the East St. Louis switching district (the same rate as accorded mines 70 miles away) was unjust, unreasonable, unduly and unjustly discriminatory and in direct violation of the act entitled "An act concerning public utilities." The cities of Belleville, O'Fallon, Caseyville, Collinsville, Troy and Edwardsville filed intervening petitions seeking the same relief as relators. Complainants and intervenors prayed that an order be entered directing the appellants to establish and put into effect fair, just, reasonable and non-discriminatory rates between the points of origin and destination in question for the transportation of bituminous coal. The defendant carriers (appellants herein) and intervening coal operators operating mines beyond the 20-mile limit in the district referred to, appeared and opposed the reduction for the near-by mines. The Commerce Commission entered an order requiring appellants to reduce the rate from all mines located on their lines at a distance not greater than 30 miles from the Relay station in the East St. Louis switching district to 70 cents per ton, and to reduce the rate from all other mines located on their lines within Group 2 to said district to 80 cents per ton. Appellants prayed

an appeal from this order to the circuit court of St. Clair county, which court affirmed the order of the commission to the extent that it fixed a rate of 70 cents for a distance of 20 miles or less and reversed and set aside that part of the order of the commission applying to the remaining mines in Group 2.

Appellants in their appeal to this court attack both the order of the commission and the order of the circuit court. They contend that the only question before the commission, and of which it had sole jurisdiction, was to determine the question whether or not the rates from relators' mines were reasonable and just, and that because relators' mines were situated within a distance of 20 miles the commission had no jurisdiction to enter any order in the case other than affecting the 20-mile distance.

The evidence introduced before the commission tended to show that the coal-carrying roads of the State of Illinois have had in effect for many years originating rate groups, in which all of the mines located within a certain group take the same rate to different destinations. Two of the principal groups in southern Illinois from which coal is transported to the East St. Louis switching district and to the St. Louis switching district, and through those districts to points beyond, are Group 2 and Group 10. Group 2 (also known as the Belleville group) includes all of the coal mines located within the counties of St. Clair, Clinton, Madison, Washington and Bond and some of the near-by mines located in adjacent counties. The distance of said mines from the East St. Louis switching district ranges from 6.5 miles to 71.84 miles. Group 10 includes the counties of Williamson and Franklin and some of the near-by mines in adjacent counties. For many years past the mines in Group 2 have had a uniform rate to the East St. Louis switching district, and this rate has been a basic rate upon which the rates from other groups in Illinois and from the western Kentucky and southern Indiana coal fields to the

East St. Louis switching district have been constructed, with certain differentials, and upon which the interstate rate to the St. Louis switching district, with a certain differential, has been constructed. The uniform rate from the mines located in Group 2 to the East St. Louis switching district has changed from time to time, and at the time the complaint in this case was filed it was 91 cents per ton.

The complainants in the trial of this case before the commission did not question the legality or propriety of the formation of groups for the transportation of coal from points of origin to points of destination. They did, however, contend that the rate of 91 cents from their mines, none of which are located more than 20 miles from the Relay station in East St. Louis, was too high, and that by the assessment of the uniform rate of 91 cents from all the mines in Group 2 they were being deprived of their natural advantages on account of their location. In other words, they, in effect, were asking and contending for a division of Group 2, creating what they called in their evidence an "inner group," the farthest mines of which would not be more than 20 miles from the Relay station in the East St. Louis switching district.

To show that the rates from their mines to the East St. Louis switching district were unreasonable and unjust and that they were discriminated against, complainants introduced evidence of a comparison of the rate per ton per mile from their mines to the East St. Louis switching district with the rates per ton per mile for long hauls in the transportation of coal in the State of Illinois, and a comparison of the rates on short hauls of coal between other points in the States of Illinois, Indiana and Minnesota. In these comparisons, however, they did not show that the circumstances and conditions in these other short hauls that they used for comparison were similar to the hauls from their mines to the East St. Louis switching district. These rate comparisons not being based on evidence showing simi-

larity of conditions could have no probative value and were therefore incompetent.

It is contended by appellants that the circuit court exceeded its jurisdiction in entering the order and judgment which it entered in this case.  Courts are not rate-fixing bodies and have no authority of law to fix or establish rates for public utilities.  This power belongs to the legislative branch of the State and has by the legislature been delegated only to the Commerce Commission.  The circuit court in reviewing an order of the Commerce Commission has no authority to revise or modify it, and the circuit court erred in so doing.  *Public Utilities Com.* v. *Springfield Gas Co.* 291 Ill. 209; *People's Gas Co.* v. *City of Chicago,* 309 id. 40.

It is contended by appellants that the Commerce Commission exceeded its jurisdiction and authority in ordering a reduction of rates from coal mines located upon the lines of appellants in Group 2 to the East St. Louis switching district that were not within the scope of the complaint filed in this case.  It is apparent from an inspection of the record that in its findings and order the commission went beyond the allegations and prayer of the complaint, in that it ordered that appellants be required to reduce the rates on coal from mines located beyond 20 miles of the Relay station and not beyond 30 miles (which mines were not included in and the rates from which comprised no part of the complaint) to 70 cents per ton, and it ordered that appellants be required to reduce the rates from all mines in Group 2 located beyond 30 miles from the Relay station (which were similarly not comprised within the complaint) to 80 cents per ton.

Section 64 of chapter 111⅔ of the statutes of the State of Illinois with reference to public utilities, requires that all investigations by the Commerce Commission with reference to the reduction and regulation of rates of public utilities must be based upon a complaint in writing, either

originating from the commission itself or from some interested party, and that the defendants or parties interested in such complaint shall have the right to file answers thereto. This all contemplated that hearings of the commission and orders entered in such matters shall be limited and circumscribed by the complaint filed. While the commission should be liberal in construing the pleadings before it, the statute requires that carriers shall be notified of the complaint which they are required to answer, and though no particular form is prescribed there must be a statement of the thing which is claimed to be wrong, sufficiently plain to put the carrier upon its defense. The evidence should be limited by the issue made. The Commerce Commission cannot enter a valid order which is broader than the written complaint filed in the case. *Public Utilities Com.* v. *City of Dixon,* 292 Ill. 521; *Oregon Railroad and Navigation Co.* v. *Fairchild,* 224 U. S. 510.

The judgment of the circuit court and the order of the Commerce Commission are reversed and the cause remanded to the commission.                    *Reversed and remanded.*