The Illinois Central Railroad Company has appealed from a judgment of the circuit court of DuPage county entered January 19, 1934, which affirmed an order of the Illinois Commerce Commission condemning a proposed freight tariff. Two appeals involving the same issues of law and fact were perfected from this judgment, one in accordance with the procedure for appeals in effect prior to January 1, 1934, and the other in compliance with the Civil Practice act in effect on and after that date. Appellant by a motion asks that the two appeals be consolidated. This cannot be done. The appeal in case No. 22496 is dismissed, as it was not perfected in accordance with the provisions of the Civil Practice act in force on and after January 1, 1934. On the other hand, the appeal in case No. 22535 appears to have been made in conformity with the provisions of the Civil Practice act, and we are thus given jurisdiction to decide the issues involved therein.
Appellant operates a main railroad line between Freeport and Hawthorne, in this State. Coleman and Munger are situated between the two places and are three and nine-tenths miles apart. The Morton Sand and Gravel Company owns a gravel deposit and processing plant at Munger. Appellant owns a gravel deposit at Coleman, portions of which it has leased to concerns like the Morton Company. The gravel deposit of the Morton Company at Munger contained sixty-five per cent sand and thirty-five per cent gravel. Owing to the increased demand for gravel and the lessened demand for sand the Morton Company could not operate its Munger plant to advantage. Appellant's deposit at Coleman contained sixty-five per cent gravel and thirty-five per cent *Page 565 
sand. The Morton Company determined that it could operate appellant's deposit at a profit if it could be leased upon a royalty basis and the gravel hauled by appellant to the processing plant at Munger for a reasonable compensation. A lease was entered into and appellant charged a transit tariff rate of three dollars per car for hauling the gravel and sand from Coleman to Munger. Appellant thereafter filed the proposed rate with the Commerce Commission. This was a local tariff rate without transit conditions — i. e., made without regard to a resumption in transit of the material from the Coleman pit after it had been processed and made merchantable at Munger. The Commerce Commission on its own initiative kept the proposed rate from going into effect, and held hearings to determine, first, if the proposed rate of three dollars per car was reasonable, and second, if this rate would disturb existing rates on gravel in that territory. The Morton Company intervened in behalf of appellant; the Chicago Gravel Company, the Illinois Sand and Gravel Company, the Moulding-Brownell Corporation and the Lehigh Stone Company, all being competitors of the Morton Company, intervened as protestants. The proposed tariff was set aside without prejudice to the filing of a new tariff without transit conditions, which would establish a rate of thirteen cents per ton, or approximately $7.80 per car, instead of the proposed three dollars.
Appellant recognized that the burden was upon it to prove that the proposed three-dollar rate was a reasonable one for the haul and switching services and that it would not disturb the existing rate structure on gravel. To do this, in addition to verbal testimony, certain evidentiary exhibits were introduced. These included evidence to show that the actual out-of-pocket cost of handling a car-load of gravel from Coleman to Munger was $1.15 upon an average handling of sixteen to twenty cars a day. While it was aware of the rule of law that for the special purpose of fixing a rate all factors must be included, appellant argued *Page 566 
that it was impossible to make further allocations against the three dollars, such as depreciation, interest, taxes, etc., due to the type of haul between Coleman and Munger. In exhibit 1 appellant introduced, for comparative purposes, the rate for hauling stone from quarries in Indiana to Bloomington and Bedford for processing. The average haul is fourteen and five-tenths miles, and the rate from all points in that territory to Bloomington and Bedford is $6.30 per car. This is a gathering service, published as a local rate. Exhibit 2 showed rates applicable on finished products between various points in Illinois and Iowa for short distances. There is shown a rate of four dollars on sand and gravel between Renwick and Elgin Junction — a two-mile haul; a rate of five dollars on similar material for a haul of eight and eight-tenths miles between Joliet and Millsdale; $3.60 on coal between LaSalle and Oglesby, a distance of three and seven-tenths miles; $2.70 on all commodities between Kankakee and Bradley, a distance of one and seven-tenths miles, and four dollars on sand and gravel from Munger to Elgin Junction, a distance of two and eight-tenths miles.
The principal evidence introduced by the intervenors consisted of exhibits 10, 11, 12, 13 and 14. No. 10 gave the history of the local rate between Coleman and Munger on sand and gravel, the average charge being over $19 per car. No. 11 showed a four-dollar rate from Munger to Elgin Junction — also included in appellant's exhibit 2. Under this the railroad company was compelled to furnish an empty car for the loading at Munger, and, after loading, an engine returned to take the car to Elgin Junction and deliver it to the Chicago, Aurora and Elgin Railroad Company. No. 11 also showed that appellant switched car-loads of freight between locations in the plant of the Morton Company at Munger for $3.15 per car. No. 12 showed a rate on sand and gravel from Coleman to Elgin Junction of $18 per car. No. 13 was a statement of car-load rates *Page 567 
on sand, gravel and crushed stone for short distances on appellant's lines.
One of the approved methods of determining whether a proposed rate is justifiable is to compare it with rates covering the same commodities hauled practically the same distance and under similar conditions. (Alton and Southern Railroad v. CommerceCom. 316 Ill. 625; Commerce Com. v. Illinois Traction, 335 id. 247; Atchison, Topeka and Sante Fe Railway Co. v. Commerce Com.
335 id. 624.) The fact that appellant did not allocate all costs by including all factors in its endeavor to show the reasonableness of the proposed rate renders its figure in that respect of lessened evidential value. This, however, is not decisive of the question before us, as we must examine into the exhibits of appellant and the intervenors to determine if they possess probative force. Appellant's exhibit 1 is illuminating, as it shows a purely local rate, non-competitive in its nature and regarded as somewhat of an inter-plant movement of car-load lots of material that requires processing in order to be merchantable. The Bloomington-Bedford rate, according to the record, is made without regard to transit conditions and covers a larger territory and longer average haul. It is only $6.30 per car, but it stands as a reasonable rate which does not disturb existing rate structures in the territory served. The Illinois illustrations given in appellant's exhibit 2 have probative force, as they show the existence of similar circumstances in respect to commodity, length of haul and rate. The evidence adduced by appellant was sufficient to show that the rates in evidence, for comparative purposes, are considered just and reasonable. The operating conditions and circumstances surrounding these rates were shown to possess the requisite degree of similarity.
The Commerce Commission found that the proposed rate of three dollars per car would result in the disturbance of the existing rate adjustment on sand, gravel and crushed stone in the territory involved. What disturbance might *Page 568 
result is not specifically pointed out, and the only evidence on which this finding could possibly rest is that contained in exhibit 14. This is a comparison of joint through rates on those same commodities from producing points not on the line of the Elgin, Joliet and Eastern railroad to stations on that road with the proposed three-dollar rate from Coleman to Munger, after adding the local rates from Munger to destinations beyond. The rates shown in exhibit 14 are not supported by operating data, as is required by the decisions of this court. (Alton and Southern Railroad v. Commerce Com. supra; Chicagoand Eastern Illinois Railway Co. v. Commerce Com. 341 Ill. 277;Chicago and Eastern Illinois Railway Co. v. Commerce Com.
343 id. 117; Moline Consumers Co. v. Commerce Com.
353 id. 119.) Exhibit 14 at most shows only a difference in rates to the same destinations. A mere difference in rates alone does not constitute undue discrimination. (Atchison,Topeka and Sante Fe Railway Co. v. Commerce Com. 335 Ill. 70;United States v. Illinois Central Railroad Co. 263 U.S. 515.) Only undue or unreasonable preference or disadvantage is prohibited. (Manufacturers Railway Co. v. United States,246 U.S. 457; Atchison, Topeka and Sante Fe Railway Co. v.Commerce Com. 335 Ill. 70.) Moreover, the position of the intervenors against the proposed rate is based upon the supposition that the haul from Coleman to Munger is a part of the haul of the processed materials from Munger to their final destinations. We can not subscribe to this theory, because the haul from Coleman to Munger can only properly be considered, under all of the circumstances, as an inter-plant haul. Other illustrations given by the protesting intervenors before the Commerce Commission lack probative force for the same or similar reasons. For instance, exhibit 10 shows a rate under which there has never been a movement of freight. It is, in fact, a paper rate so high that freight movement is practically prohibited. It necessarily follows that the *Page 569 
order of the Commerce Commission rejecting the proposed rate is not based upon sufficient evidence. The record fails to divulge a reasonable basis for the ordered rate of thirteen cents per ton. An order of the commission not based upon a foundation in the evidence should be set aside. Commerce Com. v. Cleveland,Cincinnati, Chicago and St. Louis Railway Co. 320 Ill. 214.
The right of railroad companies to initiate rates to develop traffic is a primary one. (10 Corpus Juris, sec. 625, p. 405;Chicago, New Orleans and Texas Pacific Railway Co. v.Interstate Commerce Com. 162 U.S. 184.) The mere fact that a proposed rate will enable one or more shippers to benefit from a natural location is not sufficient to warrant its rejection. The Morton Company was close to appellant's gravel pit at Coleman. This pit contained the needed kind of gravel to enable the Morton Company to profitably operate its processing plant at Munger. Failing to secure a lease on the Coleman deposit would have compelled the operation of the Munger plant at a loss, with a consequent loss of traffic to appellant. The haul from Coleman to Munger was a non-competitive one and really represented a haul between properties of the Morton Company. The material hauled from Coleman to Munger was not merchantable without processing. After processing, the gravel moved out to the market at varying intervals, depending upon orders. In the meantime the processed material would remain in storage over varying intervals of time. Clearly there was a break in the movement of the material from Coleman which prevents this court from considering the material as being merely stopped for processing while in transit to ultimate destinations. The Morton Company, before making the lease for the Coleman gravel deposit, was compelled to some extent to buy needed gravel from its competitors, some of whom are intervening protestants in this case. It is not the duty of the Interstate Commerce Commission to equalize profit and loss results *Page 570 
of competing companies in different localities by overcoming geographical and commercial advantages with rate adjustments, (East St. Louis Cotton Oil Co. v. St. Louis-San FranciscoRailroad Co. 20 I.C.C. 37,) and in Illinois the statute does not give the Commerce Commission the power to make such equalizations.
The judgment of the circuit court of DuPage county and the order of the Illinois Commerce Commission are both reversed.
Judgment and order reversed.