(No. 31377.—

THE CITY OF GRANITE CITY *et al.*, Appellants, *vs.* THE ILLINOIS COMMERCE COMMISSION *et al.*—(CHICAGO & EASTERN ILLINOIS RAILROAD COMPANY *et al.*, Appellees.)

*Opinion filed November 27, 1950.*

W. F. GRAY, of Clinton, A. C. BAER, of Tuscola, J. W. FRIBLEY, and G. L. LACHARITE, both of Pana, and F. W. PURVIS, of Sullivan, for appellants.

DAVID O. MATHEWS, P. J. WIMSEY, THOMAS N. COOK, and PATRICK C. MULLEN, all of Chicago, E. WAYNE SCHROEDER, and LEFORGEE & SAMUELS, both of Decatur, and NICHOLS & JONES, of Tuscola, (C. C. LEFORGEE, of counsel,) for appellees.

IVAN A. ELLIOTT, Attorney General, of Springfield, (WILLIAM R. MING, JR., MILTON MALLIN, and WILBUR S. LEGG, of counsel,) for Illinois Commerce Commission.

Mr. JUSTICE FULTON delivered the opinion of the court:

This is an appeal from a judgment of the circuit court of Douglas County, affirming an order entered on April 1, 1949, by the Illinois Commerce Commission, approving an application of the Chicago & Eastern Illinois Railroad Company, hereinafter called appellee, to discontinue the operation of its passenger train between Chicago and St. Louis. The application was opposed by the city of Granite City and other towns and cities along the line of appellee's railroad, which cities are hereinafter referred to as appellants.

It appears from the record that the appellee filed its petition with the commission on January 17, 1947, seeking to discontinue the operation of two trains, No. 21 and No. 22, between Villa Grove and the Illinois-Missouri State Line. During the hearing on this application, a compromise agreement was entered into between the parties, wherein the appellee promised and agreed, if permitted to discontinue trains 21 and 22, that it would substitute in place thereof a modern passenger train each way daily between Chicago and St. Louis with approved schedules and stops. The agreement was approved by the commission and the agreed order was entered by the commission on July 22,

1947, followed by a supplemental order on August 18, 1948, wherein the commission found that the operation of trains 23 and 24 (substituted as agreed for trains Nos. 21 and 22,) should be made permanent and should no longer be deemed experimental and that Nos. 21 and 22 should be permanently discontinued.

On November 8, 1948, the appellee filed its petition requesting the discontinuance and removal from service of trains Nos. 23 and 24, known as "The Cardinal," without offering to reinstate trains Nos. 21 and 22. An order was entered on April 1, 1949, authorizing the appellee to discontinue the operation of "The Cardinal" in accordance with the application.

Leaving aside, for the moment, any further development of the facts, the appellants contend that inasmuch as there was no appeal or rehearing from the order of August 18, 1948, the railroad was required to make the operation of "The Cardinal" a permanent operation and could not now come in, within the space of two years, and ask for a discontinuance of the service offered by "The Cardinal." Appellants further state that the applicant, appellee here, had offered in evidence in this last hearing the formal proceedings and formal order of the Commerce Commission in the prior case, but had not shown that there had been any change in the conditions upon which the formal agreed order was based.

The argument made is that any change or rescinding of an order of the Commerce Commission affecting the substantial rights of the parties thereto must be based upon allegations and proof that the previous order was made by mistake or upon proof and findings that the conditions have changed since the entry of the previous order so as to render the previous order unreasonable. (*Black Hawk Motor Transit Co.* v. *Commerce Com.* 398 Ill. 542, and related cases.) Further, the appellants argue, on the strength of the *Black Hawk case,* that before the commission could

lawfully rescind its previous order it was necessary that it make findings of facts different from the findings on which the original order was entered, must find that the facts as found in the original order were erroneous, or that some conditions have changed to such an extent that the facts and conditions as they existed at the time of the rescinding order were different, or that a mistake as to the law had been made, and findings must be entered applicable to the then conditions. Other contentions are made, but, for the moment, we will determine whether or not the commission was bound by the previous order of August, 1948, which, if so found, is determinative of the issues here.

In opposition to this contention of the appellants, both the appellee and the Illinois Commerce Commission, by and through the Attorney General, argue that this point was not raised in the petition for rehearing and the appellants are, therefore, barred from raising it on appeal by section 67 of the Public Utilities Act, (Ill. Rev. Stat. 1949, chap. 111⅔, par. 71,) citing *City of Elmhurst* v. *Western United Gas and Electric Co.* 363 Ill. 144, and *Brotherhood of Railroad Trainmen* v. *Elgin, Joliet and Eastern Railway Co.* 382 Ill. 55.

The appellants reply to this argument by stating that the only issue before the court is the reasonableness and lawfulness of the commission's order. They cite *Gold* v. *Commerce Com.* 383 Ill. 11, for the proposition that, under section 67 of the Public Utilities Act, which states that nothing should be urged or relied upon in the upper court which was not set forth in the application for a rehearing, it is necessary to only make the allegation that the order of the commission is unreasonable and unlawful. They then go on to state that they made the claim in the petition for rehearing that the order of the commission was unreasonable and unlawful and, therefore, are not in the posi-

tion of not having raised the question in the petition for rehearing.

To adopt the contention of appellants results in a broad interpretation of the statute and the requirements as set forth in our cases. *Brotherhood of Railroad Trainmen* v. *Elgin, Joliet and Eastern Railway Company,* 382 Ill. 55, contains the ruling that appeals from orders of the commission are purely statutory and to become legally effective they must be prosecuted in accordance with the requirements of the statute, and that the statute requires that the points argued on appeal be raised in the petition for rehearing.

Examining the petition for rehearing, we find that the only two allegations relating to this legal question are made in paragraph 7 and in paragraph 10. Paragraph 7 states that findings 1 to 29 of the order, inclusive, are contrary to the law as clearly expressed by the latest Supreme Court decisions which clearly state that no railroad company could cause the public to seek other modes of travel and then seek to justify an abandonment because of the resulting loss of business. Paragraph 10 states that findings 1 to 29, inclusive, are not supported by the evidence and the law and if sustained, would establish a precedent which would permit a railroad utility to remove any passenger train it desired by discouraging business to the extent that the train would show a loss.

It is obvious from an examination of these allegations that the argument of the appellants on this point is not proper unless we adopt their contention that the question can be raised by the general allegation in the petition for rehearing that the order of the commission was unreasonable and unlawful. Paragraph 7 of the petition is specific in that it refers to those expositions of the cases which clearly state that no railroad company could cause the public to seek other modes of travel and then seek to justify

abandonment because of loss of traffic. Under no circumstances could this paragraph be used to support the claim of the appellants under this point. Paragraph 10 contains the general allegation that the findings are not supported by the evidence and the law and then refers to the establishment of a precedent which would permit a railroad utility to remove a train by discouraging business. This, in essence, is similar to the allegations of paragraph 7. Both paragraphs deal, at least in part, with the possibility of a railroad seeking to diminish its traffic so it could use such diminution of traffic as a basis for a withdrawal of service.

We cannot feel that justice or the intent of the statute would be served by the adoption of the construction sought by the appellants here. The purpose of requiring the matters to be raised in the petition for rehearing is to inform the commission and the opposing parties wherein mistakes of law and fact were made in the order. A general allegation could not inform the commission or the opposing party of one mistake of law as opposed to another. The language in the act (Ill. Rev. Stat. 1949, chap. $111\frac{2}{3}$, par. 71,) is sufficiently specific to require in unequivocal terms the propositions relied upon by the person petitioning for the rehearing. Under these circumstances, we feel that a proper construction of the statute requires the allegations in the petition for rehearing be sufficiently specific to apprise the commission and opposing parties of the actual points relied on. In this case the petition should have contained a direct allegation that the second order was contrary to the first order, was based upon the same facts, and therefore, was contrary to law. Such was not the case here.

The only other argument made by the appellants here is that the findings in the order are contrary to the evidence and are not supported by the evidence.

It is a well-established principle, under the law of this State, that a reviewing court may not set aside an order

of the commission unless it clearly appears that the findings are against the manifest weight of the evidence or the order exceeds the jurisdiction of the commission. (*Illinois Central Railroad Co. v. Commerce Com.* 387 Ill. 256.) A summary of the order of the commission indicates that, generally speaking, the commission found that there was other service between Chicago and St. Louis which could take care of the service if the present trains of the appellee were abandoned, that the appellee incurred out-of-pocket losses, that small numbers of revenue passengers used the trains in question, that there was an out-of-pocket loss per train mile, that the appellee had made efforts to stimulate business for the train, that there was no mail service on the trains, that express service would be handled by the Railway Express Company, that the discontinuance of the trains would not leave any community without service, that there are other competitive services in the area, that the commission had considered the points raised by the appellants as to inadequate service and the failure of the railroad to obtain service, and that the commission was not justified in requiring the continued operation of the trains sought to be discontinued.

The record in this case is large and cumbersome and it is not our intent to state in detail the evidence contained therein. Suffice it to say, that we have examined each of the findings of the order of the commission and compared them with the statements and evidence found in the record. We find we would not be justified in saying that the order of the commission is contrary to, or against the manifest weight of, the evidence. There is substantial evidence in the record to support each and every finding. The record shows that the railroad company was losing large amounts of money in this operation. It shows that it had made efforts to attract passengers to its service. It shows that there is a great amount of competition from other competing lines, as well as bus competition in the area to be served.

It further shows that auto traffic in the area is on the increase. The record also shows that there is service ·for each of the towns in the area with very little inconvenience to persons desiring to obtain service.. Under the circumstances, we must say that the circuit court properly confirmed the order of the commission in allowing the appellee herein to remove and discontinue the operation of the two trains in question.

For the reasons stated herein, the judgment of the circuit court of Douglas County is affirmed.

*Judgment affirmed.*