(No. 39190.—■■■■■■■■■■)

NORTHERN ILLINOIS WATER CORPORATION, Appellant, *vs.* ILLINOIS COMMERCE COMMISSION *et al.,* Appellees.

*Opinion filed Nov. 19, 1965.—Rehearing denied Jan. 24, 1966.*

CHAPMAN AND CUTLER, of Chicago, (JOHN N. VANDER VRIES and JOHN B. KEMP, of counsel,) for appellant.

WILLIAM G. CLARK, Attorney General, of Springfield, (EDWARD G. FINNEGAN, Assistant Attorney General, of counsel,) for appellees.

Mr. JUSTICE SOLFISBURG delivered the opinion of the court:

This is an appeal from the circuit court of Champaign County confirming an order of the Illinois Commerce Commission which permanently suspended and cancelled a tariff application of the plaintiff and ordered the deletion of certain language from a prior tariff. The issues involve the manner of charging for water consumption by certain types of apartment complexes.

The plaintiff is a private water utility serving water consumers in the Champaign-Urbana area. In common with many other water utilities, the charges per gallon or per cubic foot decrease as the quantities of water used increase. The rate schedules are systematized to what are commonly referred to as "blocks", by which means the charge per cubic foot decreases in four steps from $.70 per 100 cubic feet for the first water consumed to $.145 per 100 cubic feet for all water consumed after 200,000 cubic feet. There are intermediate blocks at $.58, $.37 and $.19, all per 100 cubic feet.

The issues here involved relate to the manner of billing certain apartment complexes which are not serviced by common hallways and which have only one water meter for the entire complex. If billed as a single consumer the volume of water consumed will reduce the price per gallon, taking advantage of the block volume discounts. It is Northern's request and contention that they should be allowed to bill the types of apartment complexes here involved by multiplying the amounts of water in each block by the number of individual apartment units served before applying the block system, thereby increasing the amount of water to be consumed before giving discount rates.

It is the plaintiff's contention that as a water utility it must take into consideration the factors of peak demand and load capacity, that large industrial users have a more constant rate of consumption than residential users who collectively tend to make use of the water supply at the same time, thereby placing certain stresses and requirements on the water utility's capacity and distribution facilities. The plaintiff, in its tariff application, made a distinction between apartment complexes and office buildings which have common hallways and those which do not, contending that buildings with common hallways have a tendency to contain large numbers of smaller apartments which have better peak

and load factors than larger apartments which tend to be in complexes of separate buildings.

On January 16, 1964, Northern filed, as an addition to its tariff, its Original Sheet No. 1A, which provided as follows:

### "Water Service"

"If, at the request of or for the convenience of the owner of a property containing more than one customer as defined in the Rules, Regulations, and Conditions of Service of the Company (Ill. C.C. No. 1 Original Sheet No. 5), water is furnished to said property through a single meter, the size of each block in the foregoing schedule shall be multiplied by the number of customers, as so defined, served through such single meter. For such property the minimum bill or charge set forth above for a ⅝" meter shall likewise be multiplied by the number of customers, as so defined, served and the product thereof shall be the minimum bill for such property. Notwithstanding the foregoing, the Company reserves the right at any time to require the installation of a meter for each customer, as so defined, served through such single meter."

The Original Sheet No. 5 referred to in Original Sheet No. 1A defined "customer" or "consumer" as follows:

"(a) A building under one roof owned by one party and occupied by one person or family as a residence, or

"(b) A building under one roof owned by one party and occupied by one person, firm or corporation as one business, or

"(c) A combination of buildings in one common enclosure owned by one party and occupied by one person or family as a residence, or

"(d) A combination of buildings in one common en-

closure owned by one party and occupied by one person, firm or corporation as one business, or

"(e) The one side of a double house having a solid vertical partition wall, or

"(f) *A building owned by one party of more than one apartment and using in common one hall,* or

"(g) *A building owned by one party and having a number of offices which are rented to tenants using in common one hall and one or more means of entrance,* or

"(h) A single lot, or park, or playground, or

"(i) Each house in a row of houses." (Emphasis added.)

A petition to intervene and protest was filed by one J. F. Hyland, who is the owner of an apartment complex which does not have common hallways.

On May 20, 1964, the Commission entered an order finding that there was no material difference between apartment complex consumers having common hallways and those without; that the size of the meter and the amount of water consumption is not determined by the existence of common hallways; and that the practice of the water utility in its manner of billing was unjust, unreasonable and discriminatory, and unlawful.

The plaintiff contends that the findings of the Commission, which were confirmed by the circuit court, were not adequately founded in the evidence, were not within the jurisdiction of the Commission, and were discriminatory and unlawful.

It is noted but undisputed in the briefs that the findings of the Commission are entitled to *prima facie* weight. Section 68 of the Public Utilities Act provides in part: "The findings and conclusions of the Commission on questions of fact shall be held *prima facie* to be true and as found by the Commission; and a rule, regulation, order or decision of the Commission shall not be set aside unless it clearly ap-

pears that the finding of the Commission was against the manifest weight of the evidence presented to or before the Commission for and against such rule, regulation, order or decision, or that the same was without the jurisdiction of the Commission. * * * Rules, regulations, orders or decisions of the Commission shall be held to be *prima facie* reasonable, and the burden of proof upon all issues raised by the appeal shall be upon the person or corporation appealing from such rules, regulations, orders or decisions." Ill. Rev. Stat. 1963, chap. 111⅔, par. 72.

It is well recognized that the orders of the Commission are entitled to great weight and should not be lightly set aside. *Chicago, North Shore and Milwaukee Railroad Co. v. Commerce Com.* 354 Ill. 58, 72; *Commerce Com. ex rel. City of Bloomington v. Cleveland, Cincinnati, Chicago, and St. Louis Railway Co.* 309 Ill. 165, 170.

We cannot say that the Commission's findings are against the manifest weight of the evidence or that its findings are inadequate to support the order. The plaintiff has only six customers which they are billing as apartment complexes without common hallways. The record contains only the most generalized opinions as to the differences of resident characteristics between buildings with common hallways and those without. On the other hand, the Hyland building, owned by the intervenor, admittedly could have been enclosed by a common hallway without effecting any change in the residential or water consumption characteristics. The Commission had the opportunity to weigh the opinions of the witnesses, and its findings should be entitled to great weight.

Nor do we feel that the Commission's order is discriminatory. The converse of its order would effect a discrimination between the owners of apartment complexes with common hallways and the owners of those without. The question of whether the block-rate system for separately metered apartments is discriminatory is not before

us. That issue would involve factors of cost and economy to the utility in accounting, billing, collection, *etc.* Likewise, the record and pleadings do not raise the issue of whether or not there is a discrimination between the block-rate schedules as applied to apartments with common hallways and those apartments which are separately metered. The issue before us is whether there is foundation in the record for the finding of the Commission that there is no just reason for differentiating on the basis of common hallways. We believe that the finding is supported by adequate evidence.

Finally, the plaintiff contends that the Commission's order went beyond the scope of the hearing and the jurisdiction of the Commission in ordering the deletion of the language referring to "common hallways" in the definition of "customer" contained in Original Sheet No. 5. It is plaintiff's theory that this amounts to an amendment of the existing tariff which was not properly before the Commission upon complaint under either section 41 or section 64 of the Public Utilities Act (Ill. Rev. Stat. 1963, chap. 111⅔, pars. 41, 68.) We cannot agree. Plaintiff's proposed amendment to the existing tariff incorporated the prior definition of "customer" by reference and placed in issue the diverse systems of billing customers according to the presence or absence of common hallways which has been heretofore discussed. The proposed rate necessarily involved the prior definition of "customer". We have examined the cases cited by plaintiff and find that they are inapposite here.

Section 36 of the Public Utilities Act (Ill. Rev. Stat. 1963, chap. 111⅔, par. 36,) provides for the manner of changing rates and rate classifications on petition of the utility. In relation to the present proceedings, it provides in part: "On such hearings the Commission shall establish the rates or other charges, classifications, contracts, practices, rules or regulations proposed, in whole or in part, *or*

*others in lieu thereof,* which it shall find to be just and reasonable." (Emphasis added.)

The plaintiff placed in issue its system of billing. The Commission made its finding and had the authority to enter its order in conformity therewith. The deletion of the portion of the existing tariff relating to "common hallways" merely gives clarity to the Commission's determination of the principal issue. The judgment of the trial court confirming the order of the Commission is affirmed.

*Judgment affirmed.*