THE CITY OF CHAMPAIGN *et al.*, Plaintiffs-Appellees, v. ILLINOIS COMMERCE COMMISSION, Defendant-Appellant.

Fourth District   No. 4—85—0360

Opinion filed February 25, 1986.

Neil F. Hartigan, Attorney General, of Springfield (Hercules F. Bolos and David L. Nixon, Special Assistant Attorneys General, of Chicago, of counsel), for appellant.

Frederick C. Stavins and Margaret M. Rawles, City Attorneys, of Champaign, for appellee City of Champaign.

Kenneth Beth, City Attorney, of Urbana, for appellee City of Urbana.

JUSTICE SPITZ delivered the opinion of the court:

The Illinois Commerce Commission (ICC or Commission) appeals an order of the circuit court which reversed a Commission decision establishing new rates for municipal fire hydrant service provided by Northern Illinois Water Company (Northern). The principal points of contention between the ICC and the plaintiffs, the city of Champaign and the city of Urbana (the cities) is whether the ICC provided proper notice of its intention to raise the rates charged by Northern for municipal fire hydrant service and whether the ICC had the power to raise such rates as part of a general review of Northern's rate structure, absent a specific request by Northern that the rates be raised.

The ICC first asserts that the cities have waived the notice issue by failing to raise it in their petitions for rehearing filed with the ICC and in their briefs filed in the circuit court. We agree that the cities' failure to raise this issue in their petition for rehearing resulted in waiver thereof. Section 67 of the Public Utilities Act provides:

"[N]o appeal shall be allowed from any rule, regulation, order or decision of the Commission unless and until an application

for a rehearing thereof shall first have been filed with and finally disposed of by the Commission." (Ill. Rev. Stat. 1983, ch. 111²/₃, par. 71.)

This provision requires that a petition for rehearing state "in unequivocal terms the propositions relied upon by the persons petitioning for rehearing." *Granite City v. Illinois Commerce Com.* (1950), 407 Ill. 245, 250, 95 N.E.2d 371, 374.

■ As support for their contention that the issue of notice was properly preserved for review in their petition for rehearing, the cities rely on the following statement contained therein: "The Water Company [Northern] did not request any increase in municipal fire protection rates." In our view, this statement simply does not amount to an assertion "in unequivocal terms" that the Commission's decision is subject to reversal because the cities have not been served with proper notice of the proceedings. Rather, it is in effect an assertion that the Commission had no authority to raise the municipal fire hydrant rates absent a request by Northern that they be raised. Nowhere else in the cities' petition for rehearing are there statements which sufficiently preserve for review the notice issue. Since the issue of notice was not properly raised in the cities' petition for rehearing, the cities have waived this issue for purposes of review. (*Granite City v. Illinois Commerce Com.* (1950), 407 Ill. 245, 95 N.E.2d 371; *Albin v. Illinois Commerce Com.* (1980), 87 Ill. App. 3d 434, 408 N.E.2d 1145.) Consequently, the notice issue should not have been considered by the circuit court, and the court erred in reversing the ICC's decision on the basis of insufficient notice.

In its order reversing the ICC's decision, the circuit court declined to rule on additional issues properly preserved for review, on the basis that its decision necessitated remand of the cause to the Commission and resolution of such issues "would be premature and injurious as it could be construed as an advisory opinion." The cities did not present argument in their appellate briefs as to some of these additional issues, contending that since they were not ruled upon by the circuit court, they are not properly before this court. The ICC, on the other hand, asserts that since the complete record and all of the parties' arguments (at the trial court level) as to issues not discussed by the cities in their appellate briefs are before this court, we should in the interest of judicial economy consider those issues.

■ Two older cases, *People ex rel. Barrett v. Fon du Lac State Bank* (1941), 310 Ill. App. 28, 33 N.E.2d 714, and *Smith v. Johnson* (1925), 236 Ill. App. 339, *aff'd* (1926), 321 Ill. 134, 151 N.E. 550, hold that issues not passed upon by the trial court may not be considered

on review. The modern view appears to be, however, that where the full record is before the reviewing court, issues upon which the trial court did not rule, but which are nevertheless discussed in the parties' appellate briefs, will be considered on review. (*Krasnow v. Bender* (1979), 78 Ill. 2d 42, 397 N.E.2d 381; *Citizens for a Better Environment v. Illinois Commerce Com.* (1981), 103 Ill. App. 3d 133, 430 N.E.2d 684.) The present case differs from *Krasnow* and *Citizens for a Better Environment* in that both parties did not, in this court, brief all of the issues not ruled upon by the circuit court. However, the cities' extensive briefs filed in the circuit court, which are a part of the record on appeal, provide us with a statement of the cities' position regarding issues raised in the circuit court but not ruled upon by that court. For this reason we will consider the merits of those issues (see *First Capitol Mortgage Corp. v. Talandis Construction Corp.* (1976), 63 Ill. 2d 128, 345 N.E.2d 493), and we therefore deny the cities' motion to strike the portions of the ICC's brief discussing such issues.

■ The cities argued in the circuit court, and also assert in this court, that the ICC exceeded its authority in raising rates for water hydrant service absent a request by Northern that it do so, since the ICC has no authority to alter on its own initiative rates not proposed for change, and all ICC orders must be limited to the relief requested in the written complaint filed in the cause. As support for this contention, the ICC relies principally upon the supreme court's decision in *Alton & Southern R.R. v. Illinois Commerce Com.* (1925), 316 Ill. 625, 147 N.E. 417.

Section 65 of the Public Utilities Act provides in part:

"But nothing in this Act shall be taken to limit or restrict the power of the Commission, summarily, of its own motion, with or without notice, to conduct any investigations or inquiries authorized by this Act, in such manner and by such means as it may deem proper, and to take such action as it may deem necessary in connection therewith. With respect to any rules, regulations, decisions or orders which the Commission is authorized to issue without a hearing, and so issues, any public utility or other person or corporation affected thereby and deeming such rules, regulations, decisions or orders, or any of them, improper, unreasonable or contrary to law, may apply for a hearing thereon, setting forth specifically in such application every ground of objection which the applicant desires to urge against such rule, regulation, decision or order." (Ill. Rev. Stat. 1983, ch. 111²/₃, par. 69.)

Clear statutory language should be given effect without resort to

other aids in construction. (*People v. Robinson* (1982), 89 Ill. 2d 469, 433 N.E.2d 674; *DeWitt County Taxpayers' Association v. County Board of DeWitt County* (1983), 112 Ill. App. 3d 332, 445 N.E.2d 509.) This principle, considered together with the above-quoted statutory language, requires us to hold that the ICC acted within its powers when it on its own motion raised the municipal fire hydrant rates despite the absence of a request on the part of Northern that it do so.

Our conclusion that the ICC is authorized to alter rates in addition to those specifically proposed for alteration is consistent with modern practice in the regulation of public utility rates. In recent years, the emphasis in utility rate-making proceedings has shifted from the question of whether the sum total of charges based on the rates proposed by a utility will satisfy the utility's reasonable revenue requirements to whether the rate structure itself is properly designed, *i.e.,* whether all of the proposed rates, compared to all of the other rates in the same structure, are just, reasonable and nondiscriminatory. (See C. Phillips, The Regulation of Public Utilities 27-28, 379-80 (1984).) In the present case, there is some evidence that the proposed rates for fire hydrant service were both unjust and discriminatory in that the allocated cost of hydrant service was $270 per hydrant per year, while cities were only paying $20 per hydrant per year for the service. This represented a subsidization by metered customers of the cost of hydrant service.

■ *Alton & Southern R.R. v. Illinois Commerce Com.* (1925), 316 Ill. 625, 147 N.E. 417, does not require a result different from that which we reach. At issue in that case were proceedings initiated by means of a complaint filed by a group of railroad shippers. Unlike the present case, *Alton & Southern* did not involve an investigation by the ICC of a proposed revised rate schedule. The opinion in *Alton & Southern* does contain the statement:

"Section 64 of chapter 111²/₃ of the statutes of the State of Illinois with reference to public utilities, requires that all investigations by the Commerce Commission with reference to the reduction and regulation of rates of public utilities must be based upon a complaint in writing, either originating from the commission itself or from some interested party, and that the defendants or parties interested in such complaint shall have the right to file answers thereto. *** The commerce commission cannot enter a valid order which is broader than the written complaint filed in the case." *Alton & Southern R.R. v. Illinois Commerce Com.* (1925), 316 Ill. 625, 629-30, 147 N.E. 417,

419.)

However, the previously quoted portion of section 65 of the Public Utilities Act clearly confers upon the ICC authority to conduct investigations "summarily [and] of its own motion" (Ill. Rev. Stat. 1983, ch. 111²/₃, par. 69) and to take necessary action in connection therewith. Also, section 36 of the Public Utilities Act, pertaining to the filing of rate schedules, provides that upon the filing of such schedules, the ICC has authority "either upon complaint or upon its own initiative without complaint, at once," to conduct hearings concerning the propriety of the rates stated in the schedules. (Ill. Rev. Stat. 1983, ch. 111²/₃, par. 36.) In view of the above language contained in sections 65 and 36, we conclude that the quoted language from *Alton & Southern* is limited in its applicability to those proceedings which are initiated by complaint, as opposed to those initiated by means of a utility's filing a rate schedule.

■ The cities asserted in the circuit court that the ICC's order is improper because of franchise agreements in fact (based on written franchises which expired in 1940 and 1942) which establish rates for fire hydrant service. However, as the ICC points out, even municipalities with home-rule powers have no authority to regulate utility rates (*Peoples Gas Light & Coke Co. v. City of Chicago* (1984), 125 Ill. App. 3d 95, 465 N.E.2d 603), and the municipal power to grant franchises does not include the power to establish public utility rates. (*Sprague v. Biggs* (1945), 390 Ill. 537, 549-50, 62 N.E.2d 420, 426.) Also, the cities never adopted at election the powers which municipalities formerly possessed to regulate utility rates. (See Ill. Rev. Stat. 1979, ch. 111²/₃, pars. 85 through 90, repealed by Pub. Act 82—583, sec. 2, effective September 24, 1981.) Thus, even if the franchises in fact are in existence, they do not bar the Commission from raising the rates charged by Northern for municipal fire hydrant services.

The cities also argued in the circuit court that the ICC's decision is contrary to the manifest weight of the evidence because the portion thereof respecting fire hydrant rates is supported by scanty evidence and because the ICC failed to consider "other relevant factors," which the cities asserted it was obliged to consider by virtue of the supreme court's decision in *Citizens Utilities Co. v. Illinois Commerce Com.* (1971), 50 Ill. 2d 35, 276 N.E.2d 330.

Specifically, the cities asserted that the Commission did not properly consider that the low rates charged the cities for hydrant service are a *quid pro quo* for the cities' continuing to accord Northern a franchise in fact, the cities' reimbursing Northern for the cost of relocating fire hydrants when such is necessary due to street work, and

the cities' permitting Northern to excavate without paying fees. As the ICC points out, however, the *Citizens Utilities* court simply held that the ICC *may* pursuant to the relevant statutory provision (Ill. Rev. Stat. 1983, ch. 111²/₃, par. 32) consider municipal franchises, et cetera, as "other relevant factors" in determining the proper rate to be charged by a utility for a particular type of service; the ICC is not obligated to base its decision on such factors.

Other than *Citizens Utilities*, the only two cases relied upon by the cities in support of their contention that the Commission's order is contrary to the manifest weight of the evidence are *Illinois Bell Telephone Co. v. Illinois Commerce Com.* (1953), 414 Ill. 275, 111 N.E.2d 329, and *Lowden v. Illinois Commerce Com.* (1941), 376 Ill. 225, 33 N.E.2d 430. In *Illinois Bell Telephone Co. v. Illinois Commerce Com.* (1953), 414 Ill. 275, 111 N.E.2d 329, an ICC order was reversed because in considering the utility's request for a rate increase, the ICC did not give adequate consideration to the reproduction cost of the utility's property and did not in its order made specific findings of fact which supported its decision. In *Lowden v. Illinois Commerce Com.* (1941), 376 Ill. 225, 33 N.E.2d 430, the basis for the ICC's decision was a rule that the Commission appeared to regard as immutable, that joint railroad rates should always be higher than single line rates, even where the distances are the same. The supreme court held, in effect, that the universal application of such a rule to all cases is beyond the authority of the ICC and that there was insufficient evidence to support its application to the facts there present. In the instant case, the issue is whether the record contains sufficient evidence to support the higher municipal fire hydrant rates which the ICC ordered, and the cities point to nothing which establishes that the ICC committed errors similar to those which occurred in *Illinois Bell* and *Lowden* in arriving at its decision.

■ In sum, our review of the record convinces us that the evidence relevant to the proper level of fire hydrant rates is sufficient to support the ICC's decision to increase those rates, and that that decision is not clearly contrary to the manifest weight of the evidence. (*Village of Apple River v. Illinois Commerce Com.* (1960), 18 Ill. 2d 518, 165 N.E.2d 329.) Because of our decision that all of the cities' arguments in favor of circuit court's decision have either been waived or are nonmeritorious, we need not consider the ICC's additional argument in support of its request for reversal of the circuit court's decision, that the circuit court impermissibly considered the role which Northern played in the ICC proceedings.

For the reasons stated, the motion of the cities to strike improper

matter from the ICC's briefs is denied. Because we reverse the circuit court's order, we deny the motion of the ICC for a stay of that order, for our decision renders the question of a stay moot. The judgment of the circuit court reversing the decision of the ICC and remanding the cause to the ICC for further proceedings consistent with that decision is reversed, and the cause is remanded to the circuit court with directions to reinstate the ICC's decision.

Reversed and remanded with directions.

McCULLOUGH, P.J., and WEBBER, J., concur.