PEOPLES GAS LIGHT AND COKE COMPANY, Petitioner-Appellant, v. ILLINOIS COMMERCE COMMISSION *et al.*, Respondents-Appellees.

First District (6th Division) No. 1—90—2639

Opinion filed November 8, 1991.

James Hinchliff, Gerard T. Fox, Matthew A. Greene, and Allison L. Wood, all of Chicago, for petitioner.

Roland W. Burris, Attorney General, of Springfield (David L. Nixon, Special Assistant Attorney General, of Chicago, of counsel), for respondent Illinois Commerce Commission.

Robert Habib, of Chicago, for respondent Lionel Pittman.

JUSTICE LaPORTA delivered the opinion of the court:

Lionel Pittman, as president of Englewood Investment Enterprises, Inc., filed a verified complaint with the Illinois Commerce Commission (ICC) alleging that the Peoples Gas Light and Coke Company (Peoples Gas) improperly terminated gas service to Pittman's 18-unit apartment building in Chicago in winter conditions and without notice. Peoples Gas contended that all gas used for heating the building after October 22, 1985, was improper, the shutoff therefore was permissible and Pittman owed the gas company $13,360.69.

Following a hearing the examiner reviewed facts and testimony from witnesses, subsequently reopened proofs for additional testimony and issued a proposed order. The ICC entered an order denying Peoples Gas the right to recover the $13,360.69 and ordered that the amount be removed from the Englewood account. Peoples Gas filed an application for rehearing which was denied. Peoples Gas appealed.

Peoples Gas raises two issues on appeal: (1) whether the Commission's order must be reversed in part because it violates Illinois law in granting relief not requested by Englewood; and (2) whether the Commission's order must be reversed in part because the findings on which a part of the order is based are not supported by substantial evidence in the record.

On May 20, 1988, Pittman filed a complaint with the ICC on behalf of Englewood, contending that Peoples Gas violated the Public Utilities Act (Ill. Rev. Stat. 1989, ch. 111⅔, par. 1—101 et seq.) when it terminated gas service to his building without notice and during winter conditions. Englewood sought an ICC finding that the termination was improper and an order that Peoples Gas resume gas service upon reasonable payment.

The parties participated in a hearing before the hearing officer on September 13, 1988. The summary of facts in the resulting examiner's report found that Pittman owned the 18-unit building in question since 1982 and as landlord he provided gas heat to his tenants. The tenants paid their own cooking gas bills from separate meters. Pittman testified that, to the best of his knowledge, there had been no interruption in gas service to the building from 1982 until it was terminated without notice on February 12, 1988. Pittman stated that when he was told about the $13,360.69 outstanding bill he offered to pay $4,500 with the rest on a payment plan but Peoples Gas demanded full payment.

On cross-examination, Pittman testified that he was unaware of a notice of shutoff allegedly posted on the building in October 1985 and stated that he believed the gas was never shut off. Pittman testified that he received and paid several bills after October 1985 and he continued to make payments on a $40,000 bill from Peoples Gas that was outstanding at the time he purchased the building in 1982. He testified that he had no knowledge of an outstanding $13,360.69 bill for the period 1985 through February 12, 1988, and was never billed that amount.

A former tenant, Sarah Curtis, testified that she lived in Pittman's building from 1986 until 1988. She testified that her gas service, both for cooking and heat, was terminated without notice on February 12, 1988, forcing her to move out.

Peoples Gas special investigator Samuel Wright testified that during his review of company records he discovered that the gas service at Pittman's building had been "locked off" on October 22, 1985, though he had no personal knowledge of the circumstances surrounding the actual shut off. He acknowledged that from that date forward, Peoples Gas provided cooking gas service to 17 separate customer accounts in the same building between 1985 and 1988. He admitted that the records disclosed that Peoples Gas employees read the heating gas meter twice between January and August of 1987 but the company did not send bills to Englewood or react in any other way to those readings other than to record them in the company's records.

Peoples Gas special investigator Monty Reynolds testified that he went to Englewood's building February 12, 1988, to remove the building's gas meter but Pittman refused to permit him to do so. He testified that the heating gas had already been shut off when he arrived on February 12. He admitted that he found no evidence of tampering to bypass the shutoff.

At the conclusion of the hearing, the record was marked "heard and taken." On April 7, 1989, the hearing examiner issued his first proposed order. Peoples Gas filed exceptions to the proposed order. A new hearing officer was assigned to the case and the hearing examiner permitted the record to be reopened to allow both parties to address unanswered questions from the hearing officers.

The reopened hearing was held June 23, 1989. Englewood chose to stand on the evidence presented in the first hearing. Wright and Reynolds testified again for Peoples Gas. Neither was able to testify that he had personal knowledge that use of unauthorized gas service took place. On April 22, 1990, the hearing examiner issued his second proposed order.

On June 27, 1990, the ICC issued its order, stating in part, that as to the charge that Peoples Gas had improperly turned the gas off in winter conditions and without notice: "[t]he record is incomplete and does not allow the Commission to come to any conclusion on this allegation. [Peoples Gas'] records indicate that proper notice was effectuated; however, [Peoples Gas'] testimony lacks a sufficient basis to come to a conclusion. There is insufficient evidence proffered by [Peoples Gas] to show that gas service at the subject premises was properly shut off on October 22, 1985, for non-payment or that [Englewood] continued to receive gas usage and received a benefit from an unauthorized use of gas. The Commission can only conclude that the [complaint] must be granted to the extent that the bill rendered to [Englewood] in the amount of $13,360.69 for gas service rendered on the subject premises should be removed from [Englewood's] account with [Peoples Gas]."

The Commission order issued seven findings:

"(1) Peoples Gas Light and Coke Company, an Illinois corporation is engaged in the business of providing gas service to the public ***;

(2) The Commission has jurisdiction ***;

(3) [Englewood] disputes the responsibility for payment of a bill in the amount of $13,360.69 for gas service provided to an apartment building owned by [Englewood];

(4) [Peoples Gas'] evidence fails to show that unauthorized use of gas service took place at the subject premises between 1985 and 1988;

(5) [Peoples Gas'] evidence fails to show that [Englewood] should be held responsible for gas service resulting in a bill in the amount of $13,360.69;

(6) the bill rendered by [Peoples Gas] to [Englewood] in the amount of $13,360.69 should be removed from [Englewood's] account;

(7) the Complaint should be granted only to the extent found appropriate in Finding (6) herein."

Peoples Gas requested a rehearing, contending that the ICC had granted relief not requested by Englewood, that is, a removal of the $13,360.69 charge from its account. Rehearing was denied and the utility filed this appeal.

After briefs were filed by the ICC and Peoples Gas in this appeal, the ICC sought leave to withdraw its brief, to plead error and to have the case remanded to the Commission for further proceedings. Englewood then filed a motion for leave to intervene in this appeal, file a brief and object to the ICC's motion. Englewood's motion was ordered "taken with the case" but the ICC's motion to withdraw brief and plead error was allowed on June 28, 1991. The ICC's request to reverse and remand the case to the Commission was taken with the case. The ICC's brief was withdrawn. Peoples Gas then filed its reply brief, and the case was set for argument with Peoples Gas and Englewood as the parties in interest in this appeal.

The standard of review on the appeal of an administrative ruling from the ICC is as follows: "The findings and conclusions of the Commission on questions of fact shall be held prima facie to be true and as found by the Commission; rules, regulations, orders or decisions of the Commission shall be held to be prima facie reasonable, and the burden of proof upon all issues raised by the appeal shall be upon the person or corporation appealing from such rules, regulations, orders or decisions." Ill. Rev. Stat. 1989, ch. 111²/₃, par. 10—201(d).

■■ "The court shall reverse a Commission rule, regulation, order or decision, in whole or in part, if it finds that: A. The findings of the Commission are not supported by substantial evidence based on the entire record of evidence presented to or before the Commission[.] *** The rule, regulation, order or decision is in violation of the State or federal constitution or laws." Ill. Rev. Stat. 1989, ch. 111²/₃, pars. 10—201(e)(iv)(A), (iv)(C).

■■ In the review of ICC cases, orders of the ICC are entitled to great weight (*Northern Illinois Water Corp. v. Illinois Commerce Comm'n* (1965), 33 Ill. 2d 580, 213 N.E.2d 274) and should only be set aside if clearly against the manifest weight of the evidence. *Peoples Gas Light & Coke Co. v. Slattery* (1939), 373 Ill. 31, 25 N.E.2d 482.

■ Peoples Gas contends that since the ICC has acknowledged error, this court should give no deference to the order and should find it outside the statutory standard of *"prima facie* reasonable."

The ICC, in its motion to withdraw its brief and plead error, provided this court with no authority for such an action nor can we locate any authority. The ICC has provided this court neither with adequate reason, or sufficient proof, or case or statutory authority to reverse the ICC's order without further review, nor has Peoples Gas provided such authority.

Therefore, we first consider whether the Commission's order must be reversed in part because it violates Illinois law by granting Pittman and Englewood relief not requested.

Peoples Gas' argument here is simply that the ICC has no authority under the Public Utilities Act to grant to Pittman and Englewood relief not requested. Peoples Gas contends that the Commission's action of granting unrequested relief was improper and inconsistent with its findings of fact because the ICC specifically found it was unable to determine the validity of Englewood's allegations against Peoples Gas.

Peoples Gas argues that Englewood did not ask for the bill to be reduced or removed from its account. Englewood only sought relief in the form of a resumption of gas service and a finding that Peoples Gas had improperly disconnected the gas service on February 12, 1988.

Peoples Gas cites *Alton & Southern R.R. v. Illinois Commerce Comm'n* (1925), 316 Ill. 625, 147 N.E. 417, for its holding that the ICC cannot enter a valid order which is broader than the written complaint filed in the case. In *Alton*, the Perry Coal Company and 17 other companies filed complaints with the ICC against the Alton & Southern Railroad. The coal companies argued that the railroad was charging them an unjust, unreasonable and discriminatory rate in violation of the Public Utilities Act. The complainants were all located within 20 miles of the railroad's relay station in East St. Louis and complained that they were charged the same 91-cent-per-ton amount as other companies located as far as 70 miles away from the relay station.

The ICC entered an order requiring the railroad to reduce its rate to 70 cents per ton for coal companies that used the carrier for distances between 20 miles and 30 miles. The ICC also ordered the rate reduced to 80 cents for those companies between the distances of 30 miles and 70 miles. The circuit court affirmed the order with regard to the 70-cent charge for distances between 20 and 30 miles only. On

appeal the railroad contended that the ICC had no jurisdiction to enter an order affecting the rates for any company for transport beyond the 30-mile range because the companies filing the complaint were located within 20 miles from the relay station.

The supreme court found the ICC "went beyond the allegations and prayer of the complaint, in that it ordered that appellants be required to reduce the rates on coal from mines located beyond 20 miles of the Relay station and not beyond 30 miles *** and it ordered that appellants be required to reduce the rates on all mines *** located beyond 30 miles from the Relay station." *Alton*, 316 Ill. at 629.

The court found that the public utilities statute "requires that all investigations by the Commerce Commission with reference to the reduction and regulation of rates of public utilities must be based upon a complaint in writing." (*Alton*, 316 Ill. at 629-30.) The court held that while the Commission should be liberal in construing pleadings, the statute requires that carriers be notified of the complaint and that the complaint be specific enough to permit the carrier to defend. The court held that "[t]he evidence should be limited by the issue made. The Commerce Commission cannot enter a valid order which is broader than the written complaint filed in the case." *Alton*, 316 Ill. at 630.

Peoples Gas contends that the ICC here violated the holding in *Alton* when it issued an order broader than the written complaint filed in the case.

Englewood disagrees, contending that the ICC had the authority to enter the order that it entered and that the *Alton* case is readily distinguishable. It finds *Alton* distinguishable by noting that the Commission granted relief to coal companies who were not complainants, whereas here, the only relief sought and granted was relief to the complainant, Englewood. Englewood argues that the amount of the bill was put into question in the complaint filed by Englewood when Englewood asked the Commission to "order Peoples Gas to resume gas service to the aforesaid building upon reasonable payment."

Englewood contends the Public Utilities Act grants the Commission the authority "to conduct any investigations or inquiries authorized by this Act, in such manner and by such means as it may deem proper, and to take such action as it may deem necessary in connection therewith." Ill. Rev. Stat. 1989, ch. 111²/₃, par. 10—110.

Englewood contends that this broad authority was acknowledged in *City of Champaign v. Illinois Commerce Comm'n* (1986), 141 Ill. App. 3d 457, 490 N.E.2d 119, when the court affirmed a rate hike for water hydrant service which was granted by the ICC despite no re-

quest to do so from the water company. Englewood distinguished *City of Champaign* from *Alton* because *City of Champaign* involved a utility merely filing a rate schedule with the ICC whereas *Alton* involved an actual complaint filed against the ICC. Peoples Gas argues, however, that a further reading of the *City of Champaign* opinion shows the court found the *Alton* holding applicable only where proceedings are initiated by complaint.

■ We find the *City of Champaign* analysis of *Alton* compelling. If the ICC were permitted to enter an order that is broader than the written complaint filed in the case it then would be ruling on an issue of which the responding party had no notice and no opportunity to defend or address.

In fact, the ICC's findings belie its own ruling. The ICC at finding No. 4 found insufficient evidence of "unauthorized" gas use from 1985 to 1988. The logical conclusion then is that the gas usage by Englewood was "authorized." To order that any charge for that gas use be stricken from Englewood's bill would be inconsistent with the specific factual finding of the ICC.

Because the ICC's findings and its order to strike the $13,360.69 charge from Englewood's account granted Englewood relief not sought in the complaint, we find that the ICC order exceeded the authority of the Commission under the facts of this case. Therefore, we hold that the ICC erred in findings Nos. 3, 5 and 6 of its order that found the $13,360.69 charge at issue in the case and that ordered Peoples Gas to strike the charge from Englewood's account.

■ As to the finding of the ICC that Peoples Gas' proof of notice was from its records only but that the testimony of its employees was insufficient to show that shutoff was proper or that Englewood continued to receive gas service and to benefit from its unauthorized use, we find that the ICC ruling was error. Under Supreme Court Rule 236, any writing or record shall be admissible as evidence of the act if made in the regular course of any business and if it was the regular course of the business to make such a record, and all other circumstances of the making of the record, including lack of personal knowledge by the maker, shall not affect its admissibility. (107 Ill. 2d R. 236.) The business record does not fail as proof if the employee who made the notation does not testify so long as the record is established as having been kept in the ordinary course of business.

Because the Commission has failed to rule on Englewood's specific requests for a finding that Peoples Gas' termination of service on February 12, 1988, was improper and for an order that gas service be

resumed upon reasonable payment, we reverse and remand this cause for further proceedings consistent with this opinion.

For all of the above reasons, we reverse and remand this cause to the ICC for further proceedings consistent with this opinion.

Reversed and remanded.

RAKOWSKI, P.J., and EGAN, J., concur.