(No. 12019.—Reversed and remanded.)

THE STATE PUBLIC UTILITIES COMMISSION *ex rel.* The Chicago Telephone Company, Appellee, *vs.* THE POSTAL TELEGRAPH-CABLE COMPANY, Appellant.

*Opinion filed October 21, 1918—Leave to file second petition for rehearing denied December 4, 1918.*

1. PUBLIC UTILITIES—*telegraph companies and telephone companies perform same public service.* A telegraph company which was engaged in business in Illinois before the Public Utilities act took effect and which had for some years prior to that time been engaged in preparing its wires so they could also be used for telephone service need not obtain a certificate of necessity and convenience from the Public Utilities Commission before engaging in telephone service, as the latter service is substantially the same as the telegraph service, both being the transmission of messages over wires.

2. SAME—*what is not the construction of new facility but merely an extension of existing service.* The installation by a telegraph company in its building of the electric equipment, switch-boards, booths and instruments necessary to enable it to furnish telephone service over the wires it is using in its telegraph business is merely an extension of the company's existing service and not the construction of a new plant, equipment, property or facility.

CARTER, J., dissenting.

APPEAL from the Circuit Court of Sangamon county; the Hon. E. S. SMITH, Judge, presiding.

JACOB E. DITTUS, and JOHN P. FLOOD, (WILLIAM W. COOK, of counsel,) for appellant.

HOLT, CUTTING & SIDLEY, for the Chicago Telephone Company.

EDWARD J. BRUNDAGE, Attorney General, GEORGE T. BUCKINGHAM, WILLIAM E. TRAUTMANN, and ALBERT D. RODENBERG, for the State Public Utilities Commission.

Mr. JUSTICE DUNN delivered the opinion of the court:

After a hearing upon a complaint of the Chicago Telephone Company that the Postal Telegraph-Cable Company of Illinois was engaged in the furnishing of public telephone service between the cities of Chicago, Joliet, Morris and other cities and towns in the State of Illinois without having obtained a certificate of convenience and necessity, contrary to the provisions of section 55 of the Public Utilities act, the State Public Utilities Commission made an order that the Postal Telegraph-Cable Company of Illinois be "required to cease and desist from the operation of a public telephone business in this State until a certificate of convenience and necessity is first obtained from this commission authorizing it to engage in the operation of such business." On appeal the circuit court of Sangamon county affirmed the order, and the Postal Telegraph-Cable Company appealed to this court.

The appellant is an Illinois corporation having for its object the construction, maintenance and operation of lines of metallic telegraph and of telephone lines in the State of Illinois. Ever since its organization, in 1905, it has been engaged in the public telegraph business. In 1915 it began to furnish to the public telephone service, using for that purpose the same poles and wires used in telegraphing, by means of certain equipment installed at the places where telephone service was furnished, which separates the telegraph currents from the telephone currents and enables the same wires to be used at the same time for both classes of service. In the construction of lines intended to be used both for telephone service and ordinary telegraph service it is necessary to transpose the wires so as to cross them and thus prevent inductive interference from outside lines.

For several years before 1912 the appellant in building new lines or replacing old cables used cables of the kind necessary for the telephone business. In 1911 it began the transposition of all its copper wires so that they might be used in connection with telephone instruments as well as telegraph instruments, and in 1912 this transposition was complete. In that year a line from Chicago to Peoria was put in operation as a telephone line for the private use of the appellant, but the service was not extended to the public until 1915, after the Public Utilities act went into effect, on January 1, 1914.

The appellant insists that the public transmission of intelligence by telephone is included in the telegraph business; that in connecting its wires with telephone instruments it was merely extending its facilities for the conduct of the business in which it was engaged before the Public Utilities act went into effect, and that it was therefore not necessary for it to obtain the certificate of public convenience and necessity required by section 55 of that act.

The telegraph is an apparatus or device for transmitting messages to a distance. The name indicates that the messages are written, but, in fact, the early telegraph did not write at a distance,—messages were not graphically expressed. One of the earliest applications of the term was to the semaphore, which is defined as a signal telegraph. An indicator telegraph, in which signals are given by a pointer or indicator moving in different directions, is another form of telegraph. The Morse system was not written but consisted of a series of dots and dashes in certain order which had a conventional meaning. Afterwards the dots and dashes were omitted and the operator received the message from the sound of the sounder. Type printing and chemical printing telegraphs were later developments; and later devices were invented by which the handwriting of a person at one end of the line is reproduced at the other end, and the lines of a drawing may be reproduced in the

same way. Another device was invented by which the impulse of sound could be transmitted from one end of a line to the other, and thus a message could be transmitted by the voice of the sender. This was the telephone, which is an instrument for carrying sound to a great distance. The telephone and the telegraph transmit the same message in the same way by the same means,—that is, by sounds through the agency of a current of electricity over a wire circuit. The sounds of the telegraph instrument are the metallic taps of the sounder, which have a conventional meaning; those of the telephone are the words of the speaker reproduced at the other end of the line. Whichever method of communication is employed by the person, association or corporation furnishing the service, substantially the same public function is performed in substantially the same way. Both telegraph and telephone companies are engaged in the transmission of messages between distant places and there is no substantial difference in their character.

Soon after the invention of the telephone the Edison Telephone Company of London engaged in the business of furnishing telephone service, and in *Attorney General* v. *Edison Telephone Co.* L. R. 6 Q. B. Div. 244, it was insisted that the business was an infringement of the monopoly of the post-master general of the transmission of telegrams and of performing all the incidental service of receiving, collecting and delivering them. It was held that the whole telephone apparatus,—transmitter, wire and receiver, taken together,—formed a wire for the purpose of telegraphic communication. In *State of New Jersey* v. *Central New Jersey Telephone Co.* 53 N. J. L. 341, the telephone company was organized under the general Incorporation law as a telephone company, and it sought to exercise the power of eminent domain conferred upon telegraph companies. The court held that the telephone was a novel method of accomplishing the object for which telegraphs

were established; that a corporation created under an act which empowered it to conduct a line of telegraph can conduct it by means of the telephone, and that the telephone company was entitled to exercise the power of eminent domain under the Telegraph act. In *People's Telephone and Telegraph Co.* v. *Berks and Dauphin Turnpike Road,* 199 Pa. St. 411, a statute conferring upon telegraph companies the right to construct lines of telegraph along and upon any public road, etc., was held to apply to telephone companies as well as to telegraph companies. In *Davis* v. *Pacific Telephone Co.* 127 Cal. 312, it was held that a statute making it a criminal offense to cut telegraph wires applied to telephone wires.

Counsel for the appellee argue that the legislature has long recognized a distinction between telegraph and telephone companies and has enacted separate legislation in relation to their rights, powers and duties to the public. The act in relation to telegraph companies was passed in 1871, before telephones were known, and they are therefore not named in it. No further legislation in regard to either telephone or telegraph companies occurred until 1903, except an act in 1887 providing that no prescriptive right could be acquired by the attachment or extension of any wire to or over any building or land for telegraph, telephone, electric light or other electric purpose, and an act in 1895 providing a penalty for tapping telegraph or telephone wires. In 1903 the existing act in regard to telegraph companies was declared applicable to telephone companies. The legislature has recognized no distinction between telegraph and telephone companies but has regarded them as of precisely the same character.

The evidence shows that to enable the appellant to use its telegraph wires as a part of a telephone system it was necessary to add at the end of each telephone circuit a composite or simplex equipment consisting of coils with a large amount of iron wire in them, and also condensers, as well

as to add switch-boards and telephone booths and instruments. These would all be in the building with the ordinary telegraph instruments. In our judgment these additions did not constitute the construction of any new plant, equipment, property or facility but were only in extension of the service it was already furnishing.

The judgment of the circuit court will be reversed and the cause remanded, with directions to set aside the order of the commission.

*Reversed and remanded, with directions.*

Mr. JUSTICE CARTER, dissenting:

I do not agree with the conclusion reached in the foregoing case. I think the finding of the State Public Utilities Commission was right and that the judgment of the circuit court should be affirmed.

In the first place, I think the opinion ignores one of the vital questions in the case, which is, that under section 68 of the Public Utilities act the finding of the commission on a question of fact must be held to be true, and that any order or decision of the commission should not be set aside unless it appears that said finding is against the manifest weight of the evidence. The question under consideration in this proceeding is a question of fact,—that is, whether the business of furnishing telephone service to the public is the same business as that of furnishing telegraph service to the public. This is not a question of law calling for careful construction of statutes and interpreting scientific terms, but is largely, if not entirely, a question of fact as to whether or not, from the standpoint of supervision and regulation by the public authorities, there is a service in which the public is interested, known as the telephone service, which is separate and distinct from another kind of service in which the public is interested, known as the telegraph service. That these two kinds of service do exist and have heretofore been conducted separately by different cor-

porations, with different kinds of equipment, by different methods and with different relations to the public, is a fact, it seems to me, that is known to all men and requires no subtleties or refinements of argument as to the law for its establishment. Appellant's brief in terms recognizes the distinction between telegraph and telephone companies. While it is true counsel for appellant argue that the telephone is simply a means of telegraphing, they also state that the discovery of the telephone gave opportunity for the organization of companies which desired to limit their business to the telephone; that such companies desiring "to avoid the responsibility of having to accept written messages for transmission, with the attendant necessity of employing skilled operators and assuming responsibility for their negligence, organized companies which might be termed, properly, limited telegraph companies. But this limited telegraph method had been designated the telephone, and therefore these companies called themselves 'telephone' companies. The demand for recognition by these companies caused the legislature to pass the telephone statute, which permitted the organization of companies for the purpose of doing a purely telephone business." What body of men is better qualified to pass for the State upon the question of fact as to whether the telephone and telegraph businesses are separate services that should be regulated in a way different from each other than is the Public Utilities Commission, the principal duty of which is to thoroughly post itself on all matters relating to the existence and conduct of industrial and commercial activities which have to do with the furnishing of service to the public? In *Minneapolis, St. Paul and Sault Ste. Marie Railway Co.* v. *Railroad Com.* 136 Wis. 146, the Supreme Court of Wisconsin in discussing a similar question said: "The inquiry is not whether the rate, regulation or service fixed by the commission is just and reasonable, but whether the order of the commission is unreasonable or unlawful. * * * Whether or not the order is within the field of

285 — 27

reasonableness or outside of its boundaries is the question for the court. It is quite a different question from that which was before the commission in this respect. The order, being found by the court to be such that reasonable men might well differ with respect to its correctness, cannot be said to be unreasonable. From this aspect it is within the domain of reason,—not outside of its boundaries." It was held in that case that the court could not interfere with the finding of the commission. It seems to me that the commission's finding in this case upon this question of fact is decisive and binding upon this court, as the record does not show that the finding is against the manifest weight of the evidence.

I do not agree with the opinion in stating that the legislature of this State has not heretofore recognized the distinction between telegraph and telephone companies. In my judgment a study of the various Illinois statutes with reference to the matter will show that it has recognized such a distinction. The appellant company itself has recognized this distinction, and has made a formal acknowledgment of the same by applying to the State of Illinois for an amendment to its original charter, in 1912, permitting it to construct telephone poles in this State. Moreover, whether or not such distinction had been recognized heretofore by the legislature, we think it was clearly recognized by the language of the Public Utilities act itself that there was a difference between the telephone and telegraph service, and there certainly ought to be no question that the State can make a distinction between the two classes of service if it desires to do so and that this court cannot question the wisdom of such distinction. Section 10 of the Public Utilities act states, among other things, that the Public Utilities Commission may control and regulate public utilities within the State "for the transmission of telegraph or telephone messages between points within this State." Section 40 of the same act provides that "no telephone or telegraph company

subject to the provisions of this act shall charge or receive any greater compensation," etc. Section 44 of the same act also notes the distinction between telegraph and telephone companies, and section 56 provides "that whenever any accident occasions the loss of life or limb to any person, such public utility shall immediately give notice to the commission of the fact by the speediest means of communication, whether telephone, telegraph or post." It seems clear from these brief quotations from the various sections of the Public Utilities act itself that the legislature in passing this act recognized that there was a plain distinction between telephone and telegraph companies and that both of these classes of companies were subject to the regulation, management and control of the Public Utilities Commission. I find nothing in the Public Utilities act that indicates in any way that the legislature intended to have these two classes of service considered as if they belonged to the same class. In my judgment the contrary appears from the wording of the Public Utilities act.

Regardless of the various decisions referred to by counsel for appellant and in the foregoing opinion, indicating that under certain conditions the courts have held that telephone service will be considered a part of telegraph service, I do not think such should be the conclusion or the fair construction of the Public Utilities act itself. Perhaps as illuminating a discussion of this subject as any referred to in the briefs is found in an article on telegraph and telephone in 37 Cyc. 1608, where the learned writer of that article says: "Strictly speaking, the telegraph and telephone are different and clearly distinguishable. They have certain points of resemblance, such as the use of poles and wires and the employment of an electric current and the common object of transmitting intelligence to a distance; but they also have certain well defined differences, particularly in regard to the character of the terminal instruments and the mode of transmitting messages,—the telegraph conveying

messages by means of sounds representing words, letters or figures, requiring skilled operators to transmit, receive and translate the same, while the telephone conveys and reproduces the sound of the voice, and, with proper connections and facilities, can be used by any person and requires no skill or experience to operate it. This distinction leads to important differences in regard to the manner in which such companies transact business with their patrons and the facilities which they are required to furnish. It is a marked and universal peculiarity in the telephone business as conducted in the United States that the instruments are always rented and never sold." This same writer goes on in this article to state that the term "telegraph" is sufficiently broad and comprehensive to include the telephone, and that it has been held that in applying the principles of the common law or in construing statutes the telephone is to be considered a telegraph unless there are express statutory provisions to the contrary governing the case, giving a long list of citations supporting this conclusion. It is obvious, however, from this quotation that the writer is clearly of the opinion that in regulating the telephone and telegraph service a plain distinction in the practical enforcement of the regulation can be made by the public authorities. It seems to me, also, that a fair consideration of this great problem leads necessarily to the conclusion that there ought to be a distinction made between the two classes in the methods used by the Public Utilities Commission in regulating and directing the service of the telephone and telegraph.

A reading of the authorities on this subject will show that courts have frequently made a distinction between telegraph and telephone companies. In *Home Telegraph Co.* v. *Mayor and City Council of Nashville,* 11 Ann. Cas. 824, (118 Tenn. 1,) it was held that a body incorporated only as a telegraph company is not the same as a telephone company and does not have the same rights to operate a telephone system in the streets of a city under the authority and power

given it as a telegraph corporation. At the close of that case there is a long note discussing similar questions, with citations of authorities, among others *Richmond* v. *Southern Bell Telephone Co.* 174 U. S. 761, where it was held that a Federal statute empowering telegraph companies to construct, maintain and operate lines of telegraph through and over any portion of the public domain, or any of the military or post roads or navigable waters of the United States, had no application to telephone companies, "whose business is that of electrically transmitting articulate speech between different points." (See, also, that note for other authorities to the same effect.) In *Simmons* v. *Western Union Telegraph Co.* 63 S. C. 425, it was held that telegraph and telephone companies, so far as their services to the public are concerned, were not in the same class, the court saying, among other things: "Telegraph companies are as distinct from telephone companies as a railroad company is distinct from a steamboat company." In the second edition of Jones on Telegraph and Telephone Companies, sections 11 to 22, inclusive, are taken up by the author in discussing the difference between telegraph and telephone companies. See, also, Pond on Public Utilities, where in numerous sections (546 to 570, inclusive,) there is a discussion showing facts peculiar to telephone service, with numerous citations of authorities.

It is very clear from a reading of the above authorities that the term "telegraph," as used in statutes, does not always necessarily include the term "telephone," and it seems to me from a reading of the statute on public utilities, under which the Public Utilities Commission was acting in this matter, that it necessarily follows that the legislature made a distinction between telegraph and telephone companies, and intended that the Public Utilities Commission should make such a distinction as to their regulation and control.

I also think the opinion is wrong in holding that the construction of the new plant appellant required for its telephone purposes subsequent to January 1, 1915, without a certificate of public convenience and necessity from the commission, was not in violation of section 55 of the Public Utilities act. In *Public Utilities Com.* v. *Noble,* 275 Ill. 121, this court, in discussing a somewhat similar question, said (p. 128) : "The building of this exchange outside of the village of Perry cannot be said to have been an extension or addition to the lines of appellants, but, in effect, was the building of a new equipment or facility for the use of the shareholders or members. The test whether the new construction is entirely new or is an extension of an existing plant is the determination as to whether or not it is a construction to further the same kind of business or to install a new service." It was held in that case that the installation of a switch-board and necessary apparatus to make connections with the line already in use as a public telephone line constituted a new construction, which required the certificate of necessity, under section 55 of the Public Utilities act, before the company could install the switchboard and the necessary apparatus to make connections with lines theretofore used only for telegraph purposes. The reasoning in that case is in full accord, apparently, with the previous practice of the Public Utilities Commission in this State. (See *Pitcher Telephone Co.* v. *Steele Telephone Co.* P. U. R. 1915B, 654.) In my judgment the proposed undertaking of appellant, as held by the trial court, is not in substitution of its existing plant or equipment or an extension thereof or addition thereto, as it was formerly only engaged in the telegraph business, as that term is ordinarily understood, and these provisions of the statute relate to the business in which it was engaged at the time of and before the enactment of the Public Utilities act. The proposal of appellant is not to add something to the efficiency of its former business, but is to add an entirely new business and a

practically new plant for the conduct of that business. Under the decisions of this court and by a reasonable construction of our statute, before this new and additional plant was installed it was necessary for appellant to obtain from the Public Utilities Commission a certificate of convenience and necessity, as required by section 55 of the Public Utilities act.