(No. 40563.— ▮▮▮▮▮▮▮▮▮)

ILLINI STATE TELEPHONE COMPANY, Appellant, *vs.* THE ILLINOIS COMMERCE COMMISSION *et al.*, Appellees.

*Opinion filed January 19, 1968.—Rehearing denied March 26, 1968.*

FRANK M. PFEIFER and J. WALDO ACKERMAN, both of Springfield, for appellant.

WILLIAM G. CLARK, Attorney General, of Springfield, (EDWARD G. FINNEGAN, Assistant Attorney General, of counsel,) for appellee Illinois Commerce Commission.

NAFZIGER & OTTEN, of Springfield, (ELMER NAFZIGER, of counsel,) for appellee General Telephone Company of Illinois.

Mr. JUSTICE KLINGBIEL delivered the opinion of the court:

Illini State Telephone Company appeals from an order of the circuit court of Putnam County affirming the grant of a certificate of public convenience and necessity to a competitor, the General Telephone Company of Illinois. The question is whether the manifest weight of the evidence shows Illini to be entitled to the certificate as the first in the field.

The proceedings were begun by the filing of separate petitions with the Illinois Commerce Commission by De Pue Telephone Company, General Telephone Company, Granville Telephone Company and Illini State Telephone Company, each seeking authority to operate telephone facilities within a described territory embracing the area in dispute here. The matters were consolidated for the purpose of hearings, and each of the four parties was permitted to intervene and become a party in each of the other three matters. At the conclusion of hearings the Commission granted to General a certificate covering the disputed territory, except that no authority was granted General to provide telephone service to the generating station of Illinois Power Company or to two other subscribers therein, each of which Illini was authorized to continue serving but on a "frozen" basis. The other petitions were denied, including that of appellant, Illini State Telephone Company, which in the meantime had purchased all the assets of Granville Telephone Company with approval by the Commission.

The area in question is situated in and around the village of Hennepin. It had been served by the Hennepin Mutual Telephone Company, a small mutual telephone company not

under the jurisdiction of the Illinois Commerce Commission. Hennepin Mutual is not seeking a certificate in this cause. That part of the area north of the village and east of the Illinois River includes the future site of a large industrial steel complex to be built by Jones and Laughlin Steel Corporation, which will involve a considerable demand for telephone service. In addition there is a large area west of the river which is not certificated to or served by any public utility.

General Telephone Company provides service at the Tiskilwa and Princeton exchanges, which adjoin the Hennepin area in part on the western boundary. General also serves the Henry exchange, which adjoins the Hennepin area on the south. Granville Telephone Company, the predecessor of Illini, served two exchanges, namely the Granville exchange and the Cedar Point exchange. Its certificated territory was located north and northeast of the village of Hennepin, and south and east of the Illinois River. This territory is adjacent to most of the Hennepin area. The disputed territory lies on the west boundary line of the Granville Telephone Company's certificated territory and north of Illinois State Route 71.

The territory now served by Illini State Telephone Company, which was formerly certificated and served by Granville Telephone Company, lies directly to the east and north and is contiguous to the territory certificated to General Telephone Company of Illinois in this proceeding. The territory to be occupied by Jones and Laughlin Steel Corporation is bounded on the north and west by the river, on the south by Illinois State Route No. 71, and on the east by Illini State Telephone Company. The so-called "Jones and Laughlin area," other than a substantial portion on the east side and a small portion on the north side, both of which were served by Granville Telephone Company and now are served by Illini State Telephone Company, has been

served by Hennepin Mutual Telephone Company. General Telephone Company of Illinois is not adjacent to any of the "Jones and Laughlin area".

It was found that "special and sophisticated" communications equipment will be required to provide the services necessary to the operation of the proposed plant of Jones and Laughlin Steel Corporation, and that the telephone public utility authorized to provide service in the area must have the capability to provide the maintenance of such equipment on both a routine and emergency basis. The record contains extensive evidence concerning the respective equipment, skilled personnel and resources of the parties, but it is unnecessary to relate it here. It shows that although General is much larger than the other applicants, any of them has the technical and financial ability to perform the required service and can acquire and install the necessary equipment. In relating the facts the Commission found to this effect and it is not disputed here. In awarding the certificate to General the Commission simply stated the conclusion that General "appears to be better qualified to provide the communication services  *  *  *  than either De Pue Telephone Company or Illini State Telephone Company  *  *  *."

Illini State Telephone Company argues that the properties served by General are all separated from the area in question on the north by the Illinois River whereas Granville territory (now that of its successor, Illini) is adjacent to and north of the Jones and Laughlin Steel Corporation property, a substantial portion of which is within an area which has been served by Granville since the turn of the century. It is urged further that the most logical and economic route for toll facilities is from the Hennepin area through the Granville and Cedar Point exchanges, both of which are owned by Illini State Telephone Company, at which points they are picked up by Illinois Bell Telephone Company and carried to the toll center at

La Salle. Illini insists findings should have been made that it stepped into the shoes of Granville upon Commission approval of its purchase of Granville's assets, that it is serving an area contiguous to the one applied for in this proceeding, and that. it is willing and able to render all desired service in the area in question.

The method of regulating public utilities in Illinois is based upon the theory of regulated monopoly rather than competition. Before one utility is permitted to take the business of another already in the field it must be shown that the existing one is rendering unsatisfactory service and is unable or unwilling to provide adequate facilities. (*Illinois Highway Transportation Co. v. Commerce Com.*, 404 Ill. 610.) Where additional or extended service is required in the interest of the public and a utility in the field makes known its willingness and ability to furnish the required service, the Commerce Commission is not justified in granting a certificate of convenience and necessity to a competing utility until the utility in the field has had an opportunity to demonstrate its ability to give the required service. (*Continental Air Transport Co. v. Commerce Com.*, 38 Ill.2d 563; *Citizens Valley View Co. v. Commerce Com.*, 28 Ill.2d 294.) To authorize an order granting a certificate of convenience and necessity to one although another is in the field it is necessary that it appear the existing utility is not rendering adequate service. *Egyptian Transportation System v. Louisville and Nashville Railroad Co.*, 321 Ill. 580.

The record supports the fact that Illini State Telephone Company, thru its predecessor, the Granville Telephone Company, was first in the field in the Hennepin area. For many years, pursuant to Commission rules, a boundary map was on file including much of the territory in question as claimed by Granville. In addition, telephone service was in fact being furnished by Granville to those few customers who desired it in that sparsely populated area, and to the Illinois Power Company at the North end of the tract in

question. Moreover, the entire tract is contiguous to the certificated territory of the Illini State and it is separated by the Illinois River, a natural boundary, from the territory of General Telephone.

We must conclude therefore that Illini State was, in these premises, "first in the field" and entitled to the benefits of that doctrine as heretofore announced by this court.

The order of the circuit court affirming the Commission's decision is reversed and the cause is remanded to the Commission for appropriate action consistent with the views expressed herein.

*Reversed and remanded.*