RADIO RELAY CORP. *et al.*, Plaintiffs-Appellants, *v.* ILLINOIS COMMERCE COMMISSION, Defendant-Appellee.—(ILLINOIS BELL TELEPHONE COMPANY, Defendant-Appellee; ILLINOIS TELEPHONE ASSOCIATION, Intervenor-Appellee.)

First District (1st Division)  No. 61751

Opinion filed November 1, 1976.

SIMON, J., dissenting.

Peter V. Fazio, Jr., of Schiff, Hardin & Waite, of Chicago, and Dennis K. Muncy, of Meyer, Capel, Hirschfeld, Muncy, Jahn and Aldeen, of Champaign, for appellants.

William J. Scott, Attorney General, of Chicago (Peter A. Fasseas, James R. Sullivan, and Hercules F. Bolos, Assistant Attorneys General, of counsel), for appellee Illinois Commerce Commission.

Thomas R. Phillips and Peter R. Scullen, both of Chicago, for appellee Illinois Bell Telephone Company.

Douglas G. Brown, of Gillespie, Burke & Gillespie, P. C., of Springfield, for appellee Illinois Telephone Association.

Mr. JUSTICE BURKE delivered the opinion of the court:

On October 16, 1972, a tariff filing was made by Illinois Bell Telephone Company ("Bell") with the Illinois Commerce Commission

("Commission") which established rates, rules, regulations and conditions of service for Signaling Service ("Bellboy Service") applicable to, and allowing Bell to proceed with, the rendition of one-way tone radio paging service within certain defined and delineated areas in Illinois. On November 15, 1972, Radio Relay Corp. ("Radio Relay"), Chicago Communication Service, Inc. ("Chicago Communication") and Rogers Radio Communication Services ("Rogers Radio") filed a complaint with the Commission seeking an order which would, in effect, suspend the tariff filing made on behalf of Bell, which was named a respondent in the complaint. This was followed by an amended complaint filed with the Commission on January 19, 1973. On March 8, 1973, Illinois Telephone Association filed a petition to intervene seeking to participate in the proceeding before the Commission, which petition was granted by the Commission. On March 6, 1974, the Commission, after numerous hearings, entered its order denying the relief requested in the complaint. Complainants filed their application for rehearing and reconsideration which the Commission denied. Radio Relay and Rogers Radio appealed to the circuit court of Cook County. Chicago Communication declined to participate in the appeal. On January 14, 1975, the circuit court entered an order affirming the orders of the Commission. Radio Relay and Rogers Radio appealed.

The appellants did not seek relief against Central Telephone Company of Illinois (and General Telephone Company of Illinois) which also provided telephone services in the area. It was feared that the theory of appellants would operate to bar these telephone companies from providing paging service even though they have been certified to transact telephone public utility business in parts of the Chicago metropolitan area and that it would affect 60 telephone companies in Illinois. For these reasons the Illinois Telephone Association has been permitted to intervene in the Commission proceeding and is participating in this appeal. It is important to note that the radio common carriers, such as appellants, may only provide paging service by being interconnected to a landline telephone company and by obtaining from the Federal Communications Commission certain frequencies for use in the radio transmission of signals. The Federal Communications Commission has divided the radio spectrum and has made available to the landline telephone companies, such as Bell, certain frequencies which are not available to the radio common carriers. The intervenor asserts that if the radio common carriers were to prevail in this case the people of Cook County and surrounding areas would not have these frequencies available for their use because the Federal Communications Commission only allows the use of certain radio frequencies by landline telephone companies, which are not available to radio common carriers.

Radio Relay conducts a one-way tone-only, pocket paging service in

Cook, Lake, Will and Du Page counties, Illinois, pursuant to a certificate of convenience and necessity granted by the Commission. Rogers Radio conducts a mobile radio-telephone communication service within a territory having a radius of 25 miles from 55 East Washington Street, Chicago (the location of the transmitter), pursuant to a certificate of public convenience and necessity granted by the Commission. Chicago Communication operates a mobile radio communication system in an area having a radius of 25 miles from One North La Salle Street, Chicago (the location of the transmitter), pursuant to a certificate of public convenience and necessity granted by the Commission. An exhibit depicts the respective service areas of the parties. Each of these corporations operates a pocket paging service for the public. The pocket paging service operated by Radio Relay consists of a network of seven radio transmission stations utilized to transmit on frequencies assigned by the Federal Communications Commission. The radio signals transmitted by Radio Relay are designed to activate portable radio receivers (small enough to fit in a pocket) carried by its subscribers. These tone-only receivers emit an audible "beep" sound which alerts the subscriber to the fact that a message has been left for him at a location which he has designated. These transmitters may be triggered directly by a person utilizing equipment interconnected with the landline telephone system or manually by Radio Relay operators. Each of the appellants has been offering pocket paging service within its respective service areas for many years. In addition to these three companies, there are at least four other companies providing some form of signaling service in the area. It does not appear that any of these four companies is certificated by the Commission nor does it appear that any of them is interconnected with a landline telephone company.

On November 15, 1972, Bell's signaling service tariff became effective. This tariff incorporated Bell's existing signaling service offered in Springfield, which service began under tariff in 1960, and the proposed Bellboy signaling service offered in the Chicago metropolitan area. Bell says that the Bellboy signaling service is a substitute for the superseded signaling service offered in the Chicago metropolitan area under tariff from 1946 to 1970. No equipment utilized for the old vehicle service will be utilized for the Bellboy service. All equipment to be utilized in connection with the Bellboy service will be newly purchased or constructed by Bell. Bell has not requested from the Commission a certificate of public convenience and necessity for the construction of the new equipment it will utilize in connection with the Bellboy service.

Bellboy is a one-way, tone-only signaling service, which is dial-interconnected to the telephone network. Bellboy call numbers have been established in Bell's Chicago exchange and in several Bell suburban

exchanges. A person wishing to place a signaling call dials the seven-digit Bellboy call number, the call is switched to the Bellboy control terminal in Chicago, the customer receives a go-ahead tone, and then dials six additional digits (which is the number of the desired pocket receiving unit). The Bellboy computer terminal verifies this series of digits to detect dialing errors and signals a group of 20 radio transmitters located throughout the Bellboy service area. If the signaling service customer's receiver is within the transmission range of the Bellboy signal, the customer receives a tone or "beep." The signaled customer is thereby alerted to go to a telephone and dial a prearranged number, such as a home or office location. Bellboy receivers, unlike those provided by any of the seven others providing signal service, can recognize two different signals, a steady beep tone or an interrupted beep tone. The customer can, therefore, receive a signal to dial either of two prearranged numbers. Message holding service is not available under Bell's signaling service tariff. While other distinctions exist between Bellboy service and that offered by each of the complainants, it may be stated that Bellboy service is similar to that offered by appellants.

At the time of the hearing before the Commission, formal certificates of public convenience and necessity had been issued to Bell for 12 of the 39 Bell exchanges in which Bellboy service is offered. During oral argument on October 20, 1975, counsel for Bell stated that certificates of public convenience and necessity have been issued for all 39 exchanges in which Bellboy service is offered. Bell began operations as the Chicago Telephone Company beginning with the telephone technology available in 1881 and has had a broad variety of communication services ranging from voice, data, video and picture phone to and including many forms of mobile communications and signaling services.

Appellants maintain that Bell's rendition of Bellboy service in the Chicago metropolitan area and its construction of facilities for that purpose violate the provisions of section 55 of the Public Utilities Act (Ill. Rev. Stat. 1975, ch. 111 2/3, par. 56). Appellants assert that Bell does not possess the requisite authority to provide pocket paging service in 27 of the exchanges involved because it possesses no certificates of public convenience and necessity for these exchanges nor is it exempt by virtue of the "grandfather rights" provisions of section 55 of the Act and that if "grandfather rights" existed, they are limited to the services provided at the time the exempt status attached and do not extend to pocket paging service. Appellants further assert that the Commission erred in not finding that if Bell had "grandfather rights" these rights do not allow it to provide pocket paging service and that it must apply to the Commission for authority to construct, operate and maintain the facilities to provide pocket paging service. Appellants call attention to paragraph 1 of section

55 of the Act which states in part that "no public utility shall begin construction of any new plant, equipment, property or facility * * *." without obtaining a certificate from the Commission, while paragraph 2 indicates that no public utility "shall transact any business" without first obtaining a certificate unless exempt under the grandfather provisions contained therein. Appellants insist that this language illustrates the intent of the legislature that the Commission will have jurisdiction over all new utility services and enterprises while allowing under the "grandfathering" provisions only the uninterrupted conduct of the then utilities' present business at the time the Act was passed. Appellants ask us to find that even if "grandfather rights" existed, such rights do not grant Bell the right to provide pocket paging service without first obtaining the requisite authority from the Commission and that the Commission's order is in error for not so providing.

■■ The Commission correctly found that Bell is authorized to provide Bellboy signaling service as part of its telephone public utility business. Since 1881 Bell has continuously provided telecommunications service in this State, particularly in and around Chicago. It was not until 1913 that the legislature acted to regulate public utilities. Under the provisions of the Act, Bell was authorized to continue conducting its telephone public utility business subject to regulation by the State Public Utilities Commission and its successor, without obtaining a certificate of public convenience and necessity, because it was transacting business on January 1, 1914, when the 1913 Act went into effect. On June 29, 1921, the legislature approved "An Act concerning public utilities" which created the Illinois Commerce Commission and re-enacted the general regulatory provisions of the Act of 1913. We agree with the contention of appellees that Bell's authority to transact a telephone public utility business and to construct, operate and maintain facilities in connection with that business includes the right to provide Bellboy Signaling Service. Nothing in section 55 of the Act limits the certification to be granted thereunder to specific services or to specific facilities. The section contemplates certification to conduct a utility business, not certification on a service-by-service basis. This is true of facilities. The legislature gave the Commission expansive administrative discretion to interpret and apply the language of section 55 relating to facilities. Bell has existing plant and facilities dedicated to the public use to provide service within the Bellboy service area. The right to provide a utility service to the public is accompanied by the obligation and duty to provide plant and other facilities necessary to enable the public to transmit telephone messages between points within the State. We find that Bellboy service is a service which is ancillary to and adjunct to the primary obligation of Bell which is to provide telephone service in the Chicago metropolitan area. The purpose of Bellboy service is to

enable members of the public to transmit telephone messages between two points within the State. Paging is a means of facilitating the function of completion of telephone communications, and is therefore included in the concept of telephone service. We hold that the telephone companies presently have authority to provide paging service. See *State Public Utilities Com. ex rel. Chicago Telephone Co. v. Postal Telegraph-Cable Co.*, 285 Ill. 411, 120 N.E. 795.

Appellants insist that any authority which Bell may have had to provide Bellboy service has lapsed and is void, citing section 55 of the Act which provides that unless "exercised within a period of two years from the grant thereof, authority conferred by certificate of convenience and necessity issued by the Commission shall be null and void." Appellants say that Bell has not attempted to provide pocket paging service within two years of the enactment of the Public Utilities Act in 1921 or within two years of the development of the technology and that pursuant to the provisions of the Act, Bell should be ordered to cease and desist from providing pocket paging service until such time as it applies to the Commission for the requested authority to provide such service and receives a certificate of public convenience and necessity granting it that right.

■■ The Commission certificated Bell and other telephone companies to transact telephone public utility business. There is no dispute that Bell commenced to exercise this authority within the two-year period. We have concluded that the certificates issued by the Commission to the telephone companies authorize them to provide paging service without further certificate of authority. Under the authority of the certificates issued pursuant to the Act, Bell and other telephone companies have the right to erect facilities for the purpose of delivering authorized services, including paging service.

■■ The record supports the finding of the Commission that Bellboy Signaling Service is a telephone service and that Bell is not required to obtain a certificate of convenience and necessity prior to construction of the plant, equipment, property or facilities necessary to provide Bellboy service. These facilities are an extension or an addition to the existing plant, equipment and facilities used by Bell to provide telephone service. We do not see any violation of the Public Utilities Act in the well established administrative procedure by the Commission of regulating new service offered by telephone public utilities through tariff filings. We do not find any language in section 55 of the Act which would necessitate a change in the Commission's practice.

■■ Appellees urge that appellants are barred from relitigating the issue as to whether paging service is a new service apart from telephone service under the doctrine of collateral estoppel. In 1964 a petition was

filed with the Federal Communications Commission seeking additional frequencies for use by the telephone companies which were then available and could be used for paging. The FCC in considering this matter invited comments from the telephone companies and radio common carriers on a number of issues, the first of which was "would such assignment [to landline carriers] result in a departure from the normal and historic two-way service provided by the landline carriers?" (See the allocation of frequencies in 150.8—162 Mc/s Band, 12 F.C.C. 2d 841, 842 (1968).) In that proceeding 50 telephone companies, 17 radio common carriers, 3 industry associations and 2 equipment manufacturers participated. Radio Relay actively participated in the proceeding, contending that one-way signaling was not properly a part of telephone services to be provided by the telephone companies. After an adverse decision Radio Relay appealed. The court of appeals upheld the Commission's determination. (See *Radio Relay Corp. v. F.C.C.*, 409 F.2d 322 (2d Cir. (1969).) When Bell applied to the Federal Communications Commission for a construction permit to construct its one-way signaling stations in Chicago (the same stations that transmit the signals involved in the instant case), Radio Relay sought to contest its right to provide one-way signaling. The FCC in granting Bell's construction permit again rejected the arguments presented in the instant case. Respondents reply that the FCC action was an independent proceeding regarding allocation of frequencies under a federal statute, an issue not raised herein, and which only the FCC could properly decide. Appellants also say that the issues raised here were not urged in the FCC case and that the FCC made no ruling, and could not in fact have made a ruling, on the issues raised under section 55 of the Act. Because of our disposition of the appeal on other grounds, we have decided not to rule on the point of collateral estoppel. We are of the opinion, however, that the determination against Radio Relay by the FCC and the affirmance thereof by the Federal court of appeals (2d Cir.) are persuasive that the Illinois Commerce Commission ruled correctly.

■■ The parties cite numerous cases in support of their positions. They also call attention to distinctions in the cases and to their inapplicability to the facts and issues of the instant case. Most of the cases cited do not assist us in the task of construing section 55 of the Public Utilities Act. Our reading of section 55 convinces us that the Commission was right in deciding that the Act did not require Bell to procure a certificate of public convenience and necessity before building or extending facilities to be used in delivering Bellboy service to its customers. We conclude that the approval by the Commission of the filing of the tariff establishing rates, rules, regulations and conditions of service for Bellboy service allows Bell to proceed with the rendition of one-way tone-only radio paging service

within the defined and delineated areas in accordance with the authority given by the Public Utilities Act.

For these reasons the order of the circuit court of Cook County, entered on January 14, 1975, is affirmed.

Order affirmed.

O'CONNOR, J., concurs.

Mr. JUSTICE SIMON, dissenting:

The practical effects of the majority opinion are: First, Bell is being permitted to engage in Bellboy service without any surveillance or regulation by the Illinois Commerce Commission of the new facilities Bell must construct in order to provide this service. Second, Bell will be permitted to enter into competition with certificated utilities such as the appellants in this case without proving that a public need for such competition exists. The first-in-the-field doctrine prevents a public utility from taking the business of another already in the field unless it is shown that the services and facilities being provided by the existing utility are inadequate. (See *Illinois State Telephone Co. v. Illinois Commerce Com.* (1968), 39 Ill. 2d 239, 243, 234 N.E.2d 769.) However, this doctrine can be raised only in a certificate case, and the Illinois Commerce Commission by its ruling that Bell need not apply for a certificate denied appellants the opportunity to seek protection under this doctrine.

Section 55 of the Public Utilities Act (Ill. Rev. Stat. 1975, ch. 111 2/3, par. 56) is the keystone of public utility regulation in Illinois. It requires a utility to come before the Illinois Commerce Commission to seek authority for expenditures for the construction and operation of new facilities. Applications for certificates of public convenience and necessity have an important bearing on rate regulation and service regulation since these flow from the initial certificate procedure. Without that regulation, a utility might allocate substantial sums of money to a project, and later base a request for higher rates on such expenditures.

Section 55 requires a utility to submit to the certification procedure before it begins the construction of any new plant, equipment, property or facility except for substitutions, extensions or additions to those already in existence. To make section 55 meaningful, I believe that the exception stated therein should be strictly construed. While section 55 speaks in terms of tangible things such as plant, equipment or facilities, it is necessary to analyze the type of service contemplated as a result of the new construction or equipment because the section has been interpreted to require determination as to whether the new plant and equipment is for the purpose of providing a new and different service as compared with an

improvement in or extension of service already being supplied. In *State Public Utilities Com. ex rel. Pike County Telephone Co. v. H. G. Noble* (1916), 275 Ill. 121, 128, 113 N.E. 910, the court said:

> "The test whether the new construction is entirely new or is an extension of an existing plant is the determination as to whether or not it is a construction to further the same kind of business or to install a new service."

Thus, to the extent a newly constructed plant or newly provided equipment is used for a new and different service, Bell is required to obtain a certificate.

Appellants concede that Bell has the right to improve the landline telephone service it is providing by new technology without obtaining a new certificate of convenience and necessity each time there is an improvement in telephone technology. The introduction of extension phones, for example, did not require certification since this only involved the use of new equipment to provide the same basic landline telephone service. Similarly, public pay phones merely made traditional telephone communication available to the public outside homes and offices and on a pay-as-you-go rather than monthly charge basis.

The Bellboy facility, however, is an entirely new service. It does not involve two-way communication which is the traditional function of telephone use (compare *Illinois-Indiana Cable Television Association v. Illinois Commerce Com.* (1973), 55 Ill. 2d 205, 302 N.E.2d 334) or even voice communication. A telling argument in support of the appellants' position that Bellboy service is not an extension of or addition to telephone communications is that the appellants have rendered a service comparable to Bellboy for several years without being thought of by the public, Bell or the Illinois Commerce Commission as telephone companies.

I do not view the Bellboy one-way radio paging as telephone service. Even though radio-paging companies may use telephone lines to facilitate the services they provide, the same could be said of most service businesses. A paging service facilitates the completion of telephone calls, but this does not make it an extension of or addition to telephone communication. Sending a message by mail or messenger requesting a person to be available at a time and place to receive a phone call would increase the ratio of completed calls, but this could not realistically be regarded as constituting telephone service. I, therefore, respectfully disagree with the majority's conclusion that the Bellboy operation is an extension of telephone communication and for that reason Bell should be excused from seeking a certificate authorizing the Bellboy operation.

Assuming that Bell has "grandfather rights," an assumption vigorously disputed by the appellants, such rights do not extend to pocket-paging

service. Bell was not providing this service in 1921 (the year in which section 55 was enacted in its present form) or previously; to hold that Bell is required to obtain a certificate for Bellboy service would in no way be inconsistent with the purpose of "grandfathering" legislation which is to allow the uninterrupted conduct of an existing business.

I regard the result reached by the majority as contrary to the public policy expressed in section 55 of the Public Utilities Act. The appellants in this case have been certificated by the Illinois Commerce Commission to provide radio-paging service. Before authorizing the appellants to provide their service, the Commission held hearings to determine their technical and financial capacity as well as the public need for radio paging. In following this procedure, the Illinois Commerce Commission was fulfilling its statutory duty. The result of the majority opinion, however, is that Bell is permitted to engage in a business which the majority concedes is similar to the service offered by appellants without exposing itself to the stringent inquiry and regulation to which other radio-paging services have rightly been subjected. This represents an abdication by the Illinois Commerce Commission of its responsibility through an erroneous interpretation and application of section 55 of the Public Utilities Act and a mistaken view of the true character of radio-paging service.

Finally, I do not believe that the appellants are barred by orders of the Federal Communications Commission in a proceeding in which they were participants. In *Radio Relay Corp. v. F.C.C.* (2d Cir. 1969), 409 F.2d 322, 326, the court observed that the Communications Commission found one-way signaling was a "logical extension" of telephone service because it increased the ratio of completed phone calls. The Communications Commission in reliance on this finding allocated radio frequencies to Bell. The quick answer to the contention that those proceedings bar appellants' complaint is that neither the Federal Communications Commission nor the United States Court of Appeals for the Second Circuit purported to construe and apply section 55 of the Illinois Public Utilities Act, the statute which this appeal involves, and Bell's rights under that statute.