PRIVATE TELE-COMMUNICATIONS, INC., *et al.*, Plaintiffs-Appellants, *v.* ILLINOIS COMMERCE COMMISSION *et al.*, Defendants-Appellees.

First District (5th Division)    No. 76-459

Opinion filed September 9, 1977.

Edwin B. Spievack and Bruce P. Saypol, both of Cohn & Marks, of Washington, D. C. (William W. Hartman and James M. Lyons, both of Chicago, and Rothgerber, Appel & Powers, of Denver, Colorado, of counsel), for appellants.

Donald H. Sharp, Thomas R. Phillips, L. Bow Pritchett, and Edward Butts, all of Chicago, for appellee Illinois Bell Telephone Company.

William J. Scott, Attorney General, of Chicago (Hercules F. Bolos, Rodney C. Howard and Mary C. Ubatuba, Assistant Attorneys General, of counsel), for appellee Illinois Commerce Commission.

Mr. JUSTICE LORENZ delivered the opinion of the court:

Plaintiffs appeal from an order affirming an Illinois Commerce Commission's (Commission) order effectuating a tariff relating to Illinois Bell Telephone's (Bell) Loudspeaker Paging Systems-Type 2. They contend that: (1) the trial court erred in finding that the Commission had regulatory jurisdiction over this activity; (2) the trial court and the Commission improperly interpreted and refused to enforce a 1956 Bell system consent decree; and (3) the Commission's determination that this activity is an integral part of common carrier tele-communication services provided by Bell is not supported by the evidence.

Type 2 paging is an intraoffice loudspeaker paging system which is an optional feature provided to Bell customers. It is not a self-contained unit. Although it has amplifiers and loudspeakers, it has no separate transmitting equipment. Instead, telephone equipment performs the transmitting function. Type 2 paging cannot operate independently of the telephone system.

To activate Type 2 paging, the customer dials a specific number from his telephone station or depresses a button on a key telephone set and then speaks into the telephone handset. His voice is converted into electrical impulses by the receiver, amplified, and transmitted along telephone

wires to loudspeakers located throughout his premises. Any telephone handset within the communications system may be used to gain access to the paging feature. It is intended primarily for use in summoning people to the telephone, but it may also be used for transmitting instructions, announcements or other incidental messages.

A customer is not required to obtain Type 2 paging from Bell, but may obtain paging equipment from other suppliers such as plaintiffs, for direct interconnection with the Bell system. Bell fears that unless it offers comparable service, customers would use other suppliers for all their tele-communications needs, not just for loudspeaker paging services.

Bell's first tariff for a Loudspeaker Paging System was filed with the Commission in 1949. This service, now designated as Type 1 paging, to distinguish it from the new tariff, was designed to function either as a self-contained unit or as a part of a telephone system, using the telephone as the transmitting equipment. Although Bell ceased offering Type 1 paging to new customers in May, 1971, it continued to provide it to customers who obtained the service prior to May 18, 1961.

On September 17, 1974, Bell filed a Type 2 paging tariff with the Commission. Pursuant to section 36 of the Public Utilities Act (Ill. Rev. Stat. 1973, ch. 111 2/3, par. 36) the Commission suspended the tariff and ordered hearings on the propriety of the proposed rates and conditions for the service.

Plaintiffs, many of which are engaged in the sale and leasing of paging systems, intervened in the case. They moved to strike the tariff, arguing that the Commission lacked jurisdiction; however, the Commission denied their motion.

Following the hearings, the Commission issued an order on February 13, 1975, lifting the suspension and approving the tariff. The order stated that the Commission had jurisdiction over Bell and the subject matter, and that the regulation of this activity did not violate a Federal antitrust consent decree.

Plaintiffs, together with a third intervenor, the Electrical Contractors Association, filed a petition for rehearing arguing that "The Illinois Commerce Commission is without jurisdiction to consider, approve or regulate the subject matter of the subject tariff." When the Commission denied their petition plaintiffs sought administrative review in the circuit court.

After considering briefs and arguments, the circuit court reversed the Commission's order approving the tariff. Initially, the court found that the Commission had jurisdiction to hear the matter, but held that its finding that this activity was subject to regulation was against the manifest weight of the evidence. Defendants petitioned for rehearing, and on January 8,

1976, the circuit court vacated its previous order and affirmed the Commission's order approving the tariff.

At the time of the Commission hearings eight telephone companies in Illinois, besides Bell, provided loudspeaker paging service to their customers pursuant to published tariffs and regulations of the Commission.

OPINION

Plaintiffs first contend that the Commission erred in finding that it had regulatory jurisdiction over this activity. They argue that Type 2 paging is not a telephone service, but rather a private business whose charges the Commission has no jurisdiction to regulate or approve.

Section 8 of the Public Utilities Act (Ill. Rev. Stat. 1973, ch. 111 2/3, par. 8) provides that: "The commission shall have general supervision of all public utilities, * * * not only with respect to the adequacy, security and accommodation afforded by their service but also with respect to their compliance with this Act and any other law, with the orders of the commission and with the charter and franchise requirements."

Section 10—15 defines service: " 'Service' is used in its broadest and most inclusive sense, and includes not only the use or accommodation afforded customers or patrons, but also any product or commodity furnished by any public utility and the plant, equipment, apparatus, appliances, property and facilities employed by, or in connection with, any public utility in performing any service or in furnishing any product or commodity and devoted to the purposes in which such public utility is engaged and to the use and accommodation of the public." Ill. Rev. Stat. 1973, ch. 111 2/3, par. 10.15.

Although the activity complained of here appears to fit within the definition of "service" as provided in section 10—15, plaintiffs nonetheless argue that it does not. They point out that Type 2 paging is a one-way communication system. It is not connected to outside telephone lines and, consequently, incoming calls cannot be transmitted over the loudspeaker. They argue that this type of one-way communication is not subject to regulation even when provided by a utility because Bell's stated function is to provide "the transmission of * * * telephone messages between points within this State." Ill. Rev. Stat. 1973, ch. 111 2/3, par. 10.3(b).

We have found no cases which decide the meaning of the term "service" as used in section 10—15 of the Act. However, we are guided in our conclusion that the Commission did have authority to regulate this activity by the analogous case of *Radio Relay Corp. v. Illinois Commerce Com.* (1976), 43 Ill. App. 3d 719, 357 N.E.2d 144, *appeal allowed*, 65 Ill. 2d 584. There the court considered the scope of section 55 of the Public

Utilities Act (Ill. Rev. Stat. 1975, ch. 111 2/3, par. 56) in relation to bellboy paging, which is a one-way, tone only, radio paging service. It stated:

"The Commission correctly found that Bell is authorized to provide Bellboy signaling service as part of its telephone public utility business. * * * We find that Bellboy service is a service which is ancillary to and adjunct to the primary obligation of Bell which is to provide telephone service in the Chicago metropolitan area. The purpose of Bellboy service is to enable members of the public to transmit telephone messages between two points within the State. Paging is a means of facilitating the function of completion of telephone communications, and is therefore included in the concept of telephone service. We hold that telephone companies presently have authority to provide paging service. [Citation.]" 43 Ill. App. 3d 719, 724-25, 357 N.E.2d 148.

Plaintiffs distinguish Bellboy paging from Type 2 paging in that the latter functions solely within the customer's premises and makes no use of the public exchange network. Bellboy paging requires a call to the telephone company office through the switchboard network to transmit the signal to the receiver, and a return call to receive the message.

■■ ■ We think that the differences plaintiffs point out are not germane. Their interpretation of telephone "service" to that which is indispensable and/or essential would restrict the term "service" contrary to the express language of section 10—15. Paging is a logical extension of two-way telephone service and because its main purpose is to increase the number of completed calls, it is a use and an accommodation to the public. (See *Radio Relay Corp. v. FCC* (2d Cir. 1969), 409 F.2d 322.) Our decision is not altered by the fact that Type 2 paging may also be used for other purposes aside from calling people to the telephone. Furthermore, we agree with plaintiffs that section 8 of the Public Utility Act allows the Commission to examine into the nonpublic business of a public utility, but we find that this is not the situation here. Numerous other cases have been cited and distinguished in the briefs. However, a discussion of them is unnecessary because they do not assist us in the task of construing section 10—15 of the Act, which we find dispositive of this issue. See *Radio Relay Corp. v. Illinois Commerce Com.*, 43 Ill. App. 3d 719, 726, 357 N.E.2d 144, 149.

Plaintiffs next contend that the Commission failed to enforce a 1956 Bell system consent decree and has improperly excluded loudspeaker paging from the proscriptions of the decree.

Preliminarily, defendants contend that plaintiffs waived this issue for review because they failed to include it in their petition for rehearing before the Commission. (Ill. Rev. Stat. 1973, ch. 111 2/3, par. 71; *Granite City v. Illinois Commerce Com.* (1950), 407 Ill. 245, 95 N.E.2d 371.)

Although the petition does not refer to the consent decree we will consider it because it is inextricably woven to plaintiffs' jurisdictional argument and the Commission considered it in fashioning its final order.

On January 24, 1956, a consent decree was entered between the United States of America and defendants, Western Electric Company and American Telephone and Telegraph Company (AT&T), in a Federal action (*United States v. Western Electric Co.*, 1956 CCH Trade Cases pars. 68, 246) claiming violations under the Sherman Act (15 U.S.C. §§1, 2 and 3 (1970)).[1] Section V of the decree provided in part:

> "The defendant AT&T is enjoined and restrained from engaging, either directly, or indirectly through its subsidiaries other than Western [Electric] and Western's subsidiaries, in any business other than the furnishing of common carrier communication services; provided, however, that this Section V shall not apply to * * * (d) for a period of five (5) years from the date of this Final Judgment, leasing and maintaining facilities for private communications systems, the charges for which are not subject to public regulation, to persons who are lessees from defendants or their subsidiaries of such systems forty-five (45) days after the date of this Final Judgment * * * (g) businesses or services incidental to the furnishing by AT&T or such subsidiaries of common carrier communication services."

Section II(i) of the decree defines common carrier communications services to:

> "[I]nclude any communications services or facility, other than message telegram service, the charges for which are or become subject to regulation under existing or future laws of any state, territory, or the District of Columbia * * *."

Based on our plain reading of the consent decree, we agree with the Commission that regulation of Type 2 paging falls within the exemption in section II of the decree. Because this activity is subject to Commission regulation, it is a common carrier communications service as defined by section II(i). Two other State regulatory commissions operating under similar regulatory statutes have reached the same conclusion. (*Re New England Telephone & Telegraph Co.* (Rhode Island Public Service Commission), Docket Nos. 1143, 1144 (1974); *Re Southwestern Bell Telephone Co.* (Missouri Public Service Commission), 17 PUR 3d 381 (1957).) Our holding is further buttressed by the fact that Type 1 paging, which is a self-contained system, was at the time of the decree and is to the present regulated by the Commission.

---

[1] The Federal Court for the District of New Jersey, before which the 1956 antitrust matter was resolved, retained jurisdiction over the parties to make any further orders necessary for the construction of the consent decree.

Appellants rely on *Cantor v. Detroit Edison Co.* (1976), 428 U.S. 579, 49 L. Ed. 2d 1141, 96 S. Ct. 3110, in which plaintiff filed a Federal antitrust action alleging that Edison's free light bulb program, approved by the state commission, violated the antitrust laws by foreclosing competition in a substantial part of the light bulb market. In refusing to find an exemption from the antitrust laws, the Supreme Court stated, "There is no logical inconsistency between requiring such a firm to meet regulatory criteria insofar as it is exercising its natural monopoly powers and also to comply with anti-trust standards to the extent that it engages in business activities in competitive areas of the economy." (428 U.S. 579, 596, 49 L. Ed. 1141, 1153, 96 S. Ct. 3110, 3119.) We find nothing in the Commission's action which conflicts with this principle. Bell has complied with the antitrust standards embodied in the decree.

■■ Plaintiffs also contend that the Commission's determination that loudspeaker paging services are an integral part of tele-communications provided by Bell is contrary to the manifest weight of the evidence. We agree with defendants that this issue was not preserved for review because it was not advanced in plaintiff's petition for rehearing before the Commission. (Ill. Rev. Stat. 1973, ch. 111 2/3, par. 71; *Granite City v. Illinois Commerce Com.* (1950), 407 Ill. 245, 95 N.E.2d 371.) Moreover, we think the contention is without merit. Plaintiffs now dispute that part of the Commission order which states, "loudspeaker paging systems are an integral part of the telephone communications systems * * *." They argue that loudspeaker paging services are separate and distinct from and not incidental to the provision of common carrier tele-communication services by Bell. However, we decided this issue against plaintiffs when we considered their first contention. The finding that Type 2 paging was an integral part of Bell's telephone communications systems related to the fact that Type 2 paging was not a self-contained unit but could operate only as a part of a Bell telephone system. This finding was amply supported by the evidence. That is not to say that mere physical connection to its telephone system is enough to confer regulatory jurisdiction. Rather, it is a factor to be considered, along with the nature and function of the service to be provided.

In conclusion, we find that the Commission had jurisdiction over this activity, and its regulation thereof did not conflict with the Federal consent decree. We have considered those portions of plaintiffs' brief which Bell moved that we strike, and, we hereby deny that motion which was taken with the case.

Accordingly, the judgment of the circuit court is affirmed.

Judgment affirmed.

SULLIVAN, P. J., and WILSON, J., concur.