(No. 49009.-)

ORA P. NESS *et al.*, Appellees, v. THE ILLINOIS COM-
MERCE COMMISSION *et al.*, Appellants.

*Opinion filed May 20, 1977.—Rehearing denied Oct. 3, 1977.*

UNDERWOOD, RYAN and DOOLEY, JJ., took no part.

William J. Scott, Attorney General, of Springfield
(Hercules F. Bolos, Special Assistant Attorney General,
and Rodney Howard and Mary C. Ubatuba, Assistant
Attorneys General, of Chicago, of counsel), for appellant
Illinois Commerce Commission.

Isham, Lincoln & Beale, of Chicago (Paul T. Ruxin,

Christine M. Hehmeyer, and Clark Evans Downs, of counsel), for appellant Commonwealth Edison Co.

Richard Wathen Condon, of Purchase, N.Y., and Thomas W. McNamara and Don Ray Sampen, of Jenner & Block, of Chicago, for appellants Francis Boyd *et al.*

Hynds & Hynds, of Morris (John W. Hynds, of counsel), for appellees.

MR. JUSTICE CLARK delivered the opinion of the court:

This case involves an appeal from a judgment of the circuit court of Grundy County reversing the decision of the Illinois Commerce Commission granting a certificate of public convenience and necessity to Commonwealth Edison Company (hereinafter called Edison) to construct a transmission line from its La Salle County nuclear station to Plano Substation No. 167 across the property of the plaintiff landowners. The proposed line is 40.18 miles long and would cost an estimated $16.6 million to construct, exclusive of right-of-way costs. The circuit court found the order of the Commerce Commission against the manifest weight of the evidence and remanded the cause for further proceedings. We agree with the finding of the circuit court.

The issue in this case concerns the effect of the power line right-of-way on two alternative routes for the power line, both through agricultural properties. The route proposed by Edison runs from the La Salle County nuclear station northwest to a point near the center of section two in Manlius township, then east for some five and three-quarter miles to a point in section two of Erienna Township. It then passes north through Nettle Creek Township for one and one-half miles, east for a half mile, and then north for 22 miles to Plano substation.

The criteria followed in the route selection, as

explained by Edison, is: "[A] new right of way will be installed on a route that was selected to minimize the environmental impact of the line. To the greatest extent possible, the route will follow existing land use lines, will avoid conflict with existing structures, and will require a minimum of tree clearing."

During the proceedings, 15 landowners proposed an alternative route (the Hynds Group route) which would replace a 12-mile segment of the Edison route and keep the towers and lines off their property. The proposed route had been considered by Edison and rejected when the transmission line was first planned.

The plaintiffs contend that the Commission, in granting the proposal, did not consider the unique problems of the farming area and the effect of the transmission lines on farming practices. Further, they allege that there was no evidence in the record that witnesses who testified on behalf of the Edison proposal had any specialized knowledge or training in route selection and, in particular, route selection across farmland. The decision of the Commission was contrary to the weight of evidence and to agricultural factors affecting route selection. Further, the plaintiffs maintain that the witnesses who testified at the Commission hearing on behalf of Edison, a general engineer and a right-of-way supervisor, did not participate in the route selection and could not be meaningfully cross-examined as to the identity or particular details of the factors considered in the route selection.

The order of the Illinois Commerce Commission stated in its findings in pertinent part:

"The Hynds Group objects to approximately twelve miles of Edison's proposed transmission line in Erienna and Nettle Creek Township because it claims that twelve farm buildings are within 1,000 feet of Edison's route. The Hynds Group proposes a route which follows fence

lines, except for one-half mile thereof, while Edison's route has 6-7/8 miles of line which does not follow fence lines and splits the affected farms. Hynds Group alleges that its route contains fewer turns and the evidence does indicate that the cost of the proposed line along the Hynds Group route is $100,000 less expensive than Edison's route. The Hynds Group also alleges that Edison's route will pass through a proposed restricted landing area owned by Bennie Helland. A Hynds Group witness further alleged that soil conditions along the Edison route are better than the alternative route, making acquistion of the right-of-way along the Hynds Group route less expensive.

* * *

(6) the proposed transmission line will consist of approximately 40.18 miles of 345,000 volt double circuit transmission line to be installed on double circuit steel towers with two static wires; each circuit will be three phase, six wire (2 conductors per phase), star connected with station neutrals grounded, the estimated cost of the proposed line is $16,600,000;

(7) the recitals of fact set forth in the prefatory portion of this order are supported by the evidence introduced in the record herein and are hereby adopted as findings of fact;

(8) the alternate route proposed by the Hynds Group while feasible from an engineering aspect is impractical because it runs directly through a certificated restricted landing area [leased by Robert Halverson] and through an area used as a hunting club;

(9) the route of the proposed transmission line *** was chosen after due consideration was given to the length of the route, cost of construction and minimization of interference with present land uses."

Section 68 of "An Act concerning public utilities" (Ill. Rev. Stat. 1975, ch. 111 2/3, par. 72) provides that "[t]he findings and conclusions of the Commission on questions of fact shall be held prima facie to be true and as found by the Commission; and a rule, regulation, order or decision of the Commission shall not be set aside unless it clearly appears that the finding of the Commission was

against the manifest weight of the evidence presented to or before the Commission for and against such rule, regulation, order or decision, or that the same was without the jurisdiction of the Commission." *Village of Apple River v. Illinois Commerce Com.* (1960), 18 Ill. 2d 518; *Chicago Junction Ry. Co. v. Illinois Commerce Com.* (1952), 412 Ill. 579.

The record in this case is expansive and cumbersome, and it is not our intent to delineate the evidence submitted therein. However, upon examination of the findings of the Commission compared to the background of evidence contained in the record, we find that the order of the Commerce Commission is against the manifest weight of the evidence. The record demonstrates that the alternative route proposal would be more advantageous with respect to the cost of construction and the minimization of interference with present land uses, especially as to the effect of farm splitting and the number of farms affected thereby; the type or quality and productivity of the farms influenced by the routing; the proximity of the route to the number of building sites affected; the substantially greater cost of the Edison proposed route to the farmers in the area as well as to the public utility, and the detrimental effect of the proposed route on high productivity farms of superior soil. Further, there is evidence that the location of the transmission line through the hunting club would not create any great inconvenience to the operation of its business and that the owner of the restricted landing area would consider relocation to a new proposed commercial airport near Newark, Illinois.

For the reasons stated herein, the judgment of the circuit court is affirmed.

*Judgment affirmed.*

UNDERWOOD, RYAN and DOOLEY, JJ., took no part in the consideration or decision of this case.