JOHN S. ALBIN *et al.*, Plaintiffs-Appellants, *v.* ILLINOIS COMMERCE COMMISSION *et al.*, Defendants-Appellees.

Fourth District    No. 16072

Opinion filed August 8, 1980.—Rehearing denied September 11, 1980.

Perry S. Albin, of Tuscola, and Cherry, Flynn & Kantor, of Chicago, for appellants.

William J. Scott, Attorney General, of Chicago, and E. Wayne Schroeder and Nicholas J. Neiers, both of Sammuels, Miller, Schroeder, Jackson & Sly, of Decatur (Hercules Bolos, Special Assistant Attorney General, and Thomas J. Swabowski, Assistant Attorney General, of counsel), for appellees.

Mr. JUSTICE WEBBER delivered the opinion of the court:

Plaintiffs seek review of an order of the Illinois Commerce Commission (the Commission) granting the power of eminent domain to the Illinois Power Company (the Company) (Ill. Rev. Stat. 1977, ch. 111 2/3, par. 63). The circuit court of Champaign County has affirmed the Commission's order (Ill. Rev. Stat. 1977, ch. 111 2/3, par. 72), and we affirm both the Commission and the circuit court (Ill. Rev. Stat. 1977, ch. 111 2/3, par. 73).

The case has a lengthy history and a voluminous record, much of which is of no concern here. The learned trial judge filed a cogent memorandum opinion which has been of great help to this court.

As nearly always happens with cases of this genre, there were two sets of hearings and two orders issued by the Commission. The first was pursuant to section 55 of the Public Utilities Act (Ill. Rev. Stat. 1977, ch. 111 2/3, par. 56) (the 55 order) and the second was pursuant to sections 50 and 59 of the Public Utilities Act (Ill. Rev. Stat. 1977, ch. 111 2/3, pars. 50 and 63) (the 50/59 order). The plaintiffs-appellants here were intervenors in both of the proceedings before the Commission.

The Illinois Power Company proposes to construct, operate, and

maintain approximately 33.47 miles of new 345 KV electrical transmission line through Coles, Douglas, and Champaign counties. This line will extend from Central Illinois Public Service Company's West Kansas substation in Ashmore Township, Coles County, through farmland to the Illinois Power Company's 345 KV transmission line near Sidney, in Sidney Township, Champaign County. As the first step in accomplishing this object, the Company filed with the Commission on September 19, 1975, its petition for the 55 order.

Between October 1975 and March 1976 the Commission held hearings on this petition. As indicated above, plaintiffs were permitted to intervene and participated in the hearings. On May 19, 1976, the Commission issued its 55 order which granted to the Company a certificate of convenience and necessity for the proposed 345 KV line.

It is of central significance to our disposition of this case that this 55 order was never appealed and still stands, unreversed and unmodified.

The 50/59 order, here appealed from, had its origin in the second petition filed by the Company with the Commission on September 30, 1977. Hearings were held with plaintiffs-appellants again participating as intervenors and culminated with the 50/59 order issued December 6, 1978, which granted the Company the power of eminent domain with which to acquire the necessary easements for right-of-way for the proposed 345 KV line.

As matters now stand the Company possesses a valid certificate of convenience and necessity. It also possesses the power of eminent domain to implement its certificate, although so far as this record discloses, that power has yet to be exercised.

The plaintiffs raise a variety of issues for our consideration, but after examining the record and briefs and listening to the oral arguments, we believe that the root controversy between the parties is over the nature of the equipment needed to carry the proposed 345 KV line. In both its 55 and 50/59 orders the Commission directed that it be strung on two-pole, H-wooden structures. Plaintiffs contend that such structures are dangerous to work around, reduce farming efficiency and are environmentally insulting. They demand a single pole, metal structure.

The 55 order recites the principal issues considered and adjudicated in that proceeding as follows:

> "Four major points of interest were scrutinized by the Intervenor and Commission Staff in this case, i.e., (1) the necessity for the proposed transmission line, (2) the selection of the route for the proposed transmission line, (3) the type of structures to be utilized and (4) placement of structures with respect to existing utilization lines, i.e., section lines, half-section lines, farming divisions, fence lines, etc."

It would encumber this opinion too greatly to recite verbatim all of the Commission's findings on these issues. We are satisfied that its findings and order on each were amply supported by the evidence before it. It found that there was a necessity for the line; it gave the Company directions as to its placement with reference to existing utilization lines; and with respect to the type of structure it found:

> "The record also contains cost estimates associated with each type of construction discussed herein. * * * The Commission, mindful of its obligations and duties to insure the public of adequate and continuous service at the lowest possible prices, is of the opinion that such a cost differential outweighs those advantages which the single shaft steel pole may enjoy, and, as such, the public interest will best be served by the installation of the proposed wood H-frame structures in the instant case."

A copy of the 55 order was introduced in the 50/59 proceedings, and plaintiffs have made valiant efforts to relitigate it. However, such efforts are doomed by their failure to introduce the 55 record into the 50/59 proceedings. Rule XIV of the Commission's Rules of Practice provides in part: "(a) When a party desires to offer in evidence any portion of the record in any other proceeding, such portion shall be offered in the form of an exhibit unless otherwise stipulated by the parties."

Even if the 55 record had been introduced as an exhibit, it would have availed nothing. Section 68 of the Public Utilities Act provides in part:

> "When no appeal is taken from a rule, regulation, order or decision of the Commission, as herein provided, parties affected by such rule, regulation, order or decision, shall be deemed to have waived the right to have the merits of said controversy reviewed by a court and there shall be no trial of the merits of any controversy in which such rule, regulation, order or decision was made, by any court to which application may be made for a writ to enforce the same, or in any other judicial proceeding." Ill. Rev. Stat. 1977, ch. 111 2/3, par. 72.

■■ Plaintiffs have waived the merits of the 55 proceeding by their failure to appeal. Furthermore, the 55 order is not subject to collateral attack. (*Peoples Gas Light & Coke Co. v. Buckles* (1962), 24 Ill. 2d 520, 182 N.E.2d 169.) The 55 record was not before the circuit court and is not before us, but the 55 order stands as a conclusive finding of public convenience and necessity.

We turn next to the 50/59 order. As the trial judge noted in his memorandum opinion, there is a certain amount of overlapping with the 55 order in the issues considered. In the 50/59 order the Commission found the issues to be:

> "* * * whether Petitioner made a diligent effort a acquire the necessary easements by negotiation; whether the proposed line is

still required by public convenience and necessity as found by the Commission in Docket No. 60066 (the 55 order); whether the two-pole wood H-frame structure is still the most appropriate type of structure for the proposed line; whether the underlying Certificate issued in Docket No. 60066 is still in full force and effect; and whether certain parties should be added to the case."

As with the 55 order, we do not intend to burden this opinion with a lengthy recitation of all of the evidence produced in support of the foregoing issues. We find upon an examination of the record that more than sufficient evidence was produced on each point to sustain the findings of the Commission. A brief summary of each follows:

Prior negotiations: It was established that approximately 70% of the landowners involved had refused to grant easements. Evidence was produced that a group calling themselves the Douglas County Committee had organized for the purpose of preventing the proposed 345 KV line, or at least obtaining the steel pole structures for it. This was to be accomplished by keeping all of the landowners from accepting any offer made by the Company. An example of the testimony is:

"Q. Mrs. _____, I take it by your testimony that your position is that you will not and would not grant an easement to the Illinois Power Company for any price if wood pole structures were to be placed on the land?

A. That's right."

The matter was summarized by the Commission in its order as follows:
"[I]t is suggested that petitioner's inability to obtain 70 percent of the necessary tracts is due primarily to petitioner's refusal to use single pole structures and reflects a failure to negotiate diligently. Testimony by intervenors who are members of the Douglas committee indicates that these witnesses are unwilling to negotiate for wood H-frame structures at any price, and have advised other landowners not to accept any offer involving two-pole structures. Obviously, intervenors cannot rely on their own organized refusal to consider offers involving a type of structure specified in the Commission's Section 55 order certificating the line as grounds for an argument that petitioners did not engage in responsible negotiations, or that failure to secure a certain percentage of easements reflects a lack of diligence on petitioner's part."

Necessity: It must be borne in mind in discussing this aspect of the litigation that we are dealing with two different concepts of necessity. These became somewhat blurred in the proceedings before the Commission. Public convenience and necessity were found in the 55 order in effect, an authorization for the project. "Necessity" also appears in sections 50 and 59 of the Public Utilities Act, in effect, granting the means to execute the

project. In the instant case, the necessity under section 55 was to provide more reliable electrical service to the Champaign-Danville area; the necessity under section 50 was for additions and improvements to implement the more reliable service; and the necessity under section 59 was to provide the means of obtaining easements for right-of-way for the additions and improvements.

■■ Evidence was received from the Company's Supervising Engineer-Transmission Planning that the need for more reliable service still existed and a copy of the 55 order was received into evidence. We have already dealt with the failure of negotiations in acquiring grants of easements without condemnation. The supreme court dealt with this problem in *Peoples Gas Light & Coke Co. v. Buckles* (1962), 24 Ill. 2d 520, 528, 182 N.E.2d 169, wherein it said:

> "Nevertheless, on this record, we think plaintiff has shown a good faith attempt to negotiate. The wide spread between the offering price of the plaintiff and the demand of the defendants, based on their differing theories of value for the storage rights, shows that no practical solution could have been reached through further negotiation."

Plaintiffs here apparently would have the Commission try the section 55 necessity *de novo* in the 50/59 proceedings. No authority is cited for such a proposition, and it would be improper since the issue in the 50/59 proceeding is whether the additions and improvements could be made and the easements acquired without the use of the power of eminent domain. The engineer's testimony stands unrebutted, and the record is fulsome as to the failure of negotiations.

In discussing necessity, it should also be borne in mind that "public use" is not part of the concept. "Necessity" is a legislative determination which is one of the prerequisites for the exercise of the power of eminent domain. "Public use" is a judicial function in the eminent domain suit itself. Courts must always be wary in dealing with the subject of necessity that they do not usurp the legislative function. (*Chicago, Rock Island & Pacific R.R. v. Town of Lake* (1874), 71 Ill. 333.) The question of public use will arise, if at all, in the condemnation proceedings themselves, which, so far as this record discloses, are yet to be filed and heard.

Appropriateness of structures: As indicated above, this appears to be the principal battlefield of the parties, the other questions being in the nature of skirmishes. Each side produced a plethora of figures and comparisons by which it attempted to justify its position. We do not propose to enter that thicket.

As we have already indicated, in the 55 order the Commission found that the wooden, H-frame structures' cost differential outweighed any

purported advantages of the steel pole structures. In the 50/59 proceedings the Commission indicated that one of the issues was whether the wooden structures "still" were most appropriate. The reasonable inference from the word "still" is whether the cost differential remained the same. The testimony of the Company's engineer was that it did. At the time of the 55 order the differential was indicated to be 41%.

Plaintiffs propounded a theory upon which the differential might be reduced 22.8% to 26%. However, whatever the range of the differential might be, the Commission apparently felt that it still was too high and found in favor of the wooden, H-frame structures. We cannot say that such finding was against the manifest weight of the evidence.

To recapitulate to this point: The 55 order is final and not subject to further argument. The 50/59 order is amply supported by the evidence. We are aware that it is not the duty of courts to iconize orders of the Commission (*City of Alton v. Commerce Com.* (1960), 19 Ill. 2d 76, 165 N.E.2d 513), and we view with compassion the concerns of the plaintiffs. However, we view with disdain the statement of one of them that he believed in the orderly process of law "if it is convenient with everyone concerned."

Two final points need be touched on only briefly. Plaintiffs rely on *Ness v. Illinois Commerce Com.* (1977), 67 Ill. 2d 250, 367 N.E.2d 672, as parallel to the instant case. In *Ness*, the supreme court affirmed the circuit court which reversed an order of the Commission granting a certificate of convenience and necessity to construct a power line across certain farm land. *Ness* was a section 55 proceeding, and the appeal was from a section 55 order, not from a 50/59 order as in the instant case. If plaintiffs had appealed the 55 order in this case, *Ness* might have some persuasion.

■■ Plaintiffs have also contested the lack of notice for section 59 hearings by the Commission and claim that such lack is a violation of constitutional due process. This issue has been waived since it was never presented to the Commission. Section 67 of the Public Utilities Act (Ill. Rev. Stat. 1977, ch. 111 2/3, par. 71) provides, "No person or corporation in any appeal shall urge or rely upon any grounds not set forth in such application for a rehearing before the Commission."

The judgment and order of the circuit court of Champaign County are affirmed.

Affirmed.

LEWIS and CRAVEN, JJ., concur.